NEW YORK EX REL. HALVEY v. HALVEY.

No. 384.   Argued February 5, 1947.—Decided March 31, 1947.

*B. E. Hendricks* argued the cause, and *Robert S. Florence* filed a brief, for petitioner.

*Samuel Shapiro* argued the cause and filed a brief for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The Halveys were married in 1937 and lived together in New York until 1944. In 1938 a son was born. Marital troubles developed. In 1944 Mrs. Halvey, without her husband's consent, left home with the child, went to Florida, and established her residence there. In 1945 she instituted a suit for divorce in Florida. Service of process on Mr. Halvey was had by publication, he making no appearance in the action. The day before the Florida decree was granted, Mr. Halvey, without the knowledge or approval of his wife, took the child back to New York. The

next day the decree was entered by the Florida court, granting Mrs. Halvey a divorce and awarding her the permanent care, custody, and control of the child.

Thereupon she brought this *habeas corpus* proceeding in the New York Supreme Court, challenging the legality of Mr. Halvey's detention of the child. After hearing, the New York court ordered (1) that the custody of the child remain with the mother; (2) that the father have rights of visitation including the right to keep the child with him during stated vacation periods in each year, and (3) that the mother file with the court a surety bond in the sum of $5,000, conditioned on the delivery of the child in Florida for removal by the father to New York for the periods when he had the right to keep the child with him. 185 Misc. 52, 55 N. Y. S. 761. Both the Appellate Division, 269 App. Div. 1019, 59 N. Y. S. 2d 396, and the Court of Appeals, 295 N. Y. 836, 66 N. E. 2d 851, affirmed without opinion. The case is here on a petition for a writ of certiorari which we granted because it presented an important problem under the Full Faith and Credit Clause of the Constitution. Article IV, § 1.

The custody decree was not irrevocable and unchangeable; the Florida court had the power to modify it at all times.[1] Under Florida law the "welfare of the child" is the "chief consideration" in shaping the custody decree or in subsequently modifying or changing it. *Frazier* v. *Frazier*, 109 Fla. 164, 169, 147 So. 464, 466; See *Phillips* v. *Phillips*, 153 Fla. 133, 134–135, 13 So. 2d 922, 923.

---

[1] "In any suit for divorce or alimony, the court shall have power at any stage of the cause to make such orders touching the care, custody and maintenance of the children of the marriage, and what, if any, security to be given for the same, as from the circumstances of the parties and the nature of the case may be fit, equitable and just, and such order touching their custody as their best spiritual as well as other interests may require." Fla. Stats. (1941) § 65.14.

But "the inherent rights of parents to enjoy the society and association of their offspring, with reasonable opportunity to impress upon them a father's or a mother's love and affection in their upbringing, must be regarded as being of an equally important, if not controlling consideration in adjusting the right of custody as between parents in ordinary cases." *Frazier* v. *Frazier,* 109 Fla., p. 169, 147 So., p. 466. Facts which have arisen since the original decree are one basis for modification of the custody decree. *Frazier* v. *Frazier,* 109 Fla., p. 168, 147 So., p. 465; *Jones* v. *Jones,* 156 Fla. 524, 527, 23 So. 2d 623, 625. But the power is not so restricted. It was held in *Meadows* v. *Meadows,* 78 Fla. 576, 83 So. 392–393, that "the proper custody of the minor child is a proper subject for consideration by the chancellor at any time, even if facts in issue could have been considered at a previous hearing, *if such facts were not presented or considered at a former hearing.*" (Italics added.) Or, as stated in *Frazier* v. *Frazier,* 109 Fla., p. 168, 147 So., p. 465, a custody decree "is not to be materially amended or changed afterward, unless on altered conditions shown to have arisen since the decree, or because of material facts bearing on the question of custody and existing at the time of the decree, but which were unknown to the Court and then only for the welfare of the child." The result is that custody decrees of Florida courts are ordinarily not *res judicata* either in Florida or elsewhere, except as to the facts before the court at the time of judgment. *Minick* v. *Minick,* 111 Fla. 469, 490–491, 149 So. 483, 492.

Respondent did not appear in the Florida proceeding. What evidence was adduced in that proceeding bearing on the welfare of the child does not appear. But we know that the Florida court did not see respondent nor hear evidence presented on his behalf concerning his fitness

or his claim "to enjoy the society and association" of his son. *Frazier* v. *Frazier,* 109 Fla., p. 169, 147 So., p. 466. It seems to us plain, therefore, that under the rule of *Meadows* v. *Meadows, supra,* the Florida court would have been empowered to modify the decree in the interests of the child and to grant respondent the right of visitation, if he had applied to it rather than to the New York court and had presented his version of the controversy for the first time in his application for modification.

So far as the Full Faith and Credit Clause is concerned, what Florida could do in modifying the decree, New York may do. Article IV, § 1 of the Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Congress by the Act of May 26, 1790, c. 11, as amended, R. S. § 905, 28 U. S. C. § 687 declared that judgments "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." The general rule is that this command requires the judgment of a sister State to be given full, not partial, credit in the State of the forum. See *Davis* v. *Davis,* 305 U. S. 32; *Williams* v. *North Carolina,* 317 U. S. 287. But a judgment has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered. See *Reynolds* v. *Stockton,* 140 U. S. 254, 264. If the court of the State which rendered the judgment had no jurisdiction over the person or the subject matter, the jurisdictional infirmity is not saved by the Full Faith and Credit Clause. See *Thompson* v. *Whitman,* 18 Wall. 457; *Griffin* v. *Griffin,* 327 U. S. 220. And if the amount payable under a decree—as in

the case of a judgment for alimony—is discretionary with the court which rendered it, full faith and credit does not protect the judgment. *Sistare* v. *Sistare,* 218 U. S. 1, 17. Whatever may be the authority of a State to undermine a judgment of a sister State on grounds not cognizable in the State where the judgment was rendered (Cf. *Williams* v. *North Carolina,* 325 U. S. 226, 230), it is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered.

In this case the New York court, having the child and both parents before it, had a full hearing and determined that the welfare of the child and the interests of the father warranted a modification of the custody decree. It is not shown that the New York court in modifying the Florida decree exceeded the limits permitted under Florida law. There is therefore a failure of proof that the Florida decree received less credit in New York than it had in Florida.

The narrow ground on which we rest the decision makes it unnecessary for us to consider several other questions argued, *e. g.,* whether Florida at the time of the original decree had jurisdiction over the child,[2] the father having removed him from the State after the proceedings started but before the decree was entered; whether in absence of personal service the Florida decree of custody had any binding effect on the husband; whether the power, of New York to modify the custody decree was greater

---

[2] The legal domicile of the child is usually the domicile of his father. *Minick* v. *Minick,* 111 Fla., p. 490, 149 So., p. 492; *Dorman* v. *Friendly,* 146 Fla. 732, 738, 1 So. 2d 734, 736. The power of the Florida courts to award custody of a child is dependent either on the child being legally domiciled in Florida or physically present there. *Dorman* v. *Friendly, supra; State ex rel. Clark* v. *Clark,* 148 Fla. 452, 4 So. 2d 517.

than Florida's power; whether the State which has jurisdiction over the child may, regardless of a custody decree rendered by another State, make such orders concerning custody as the welfare of the child from time to time requires. On all these problems we reserve decision.

*Affirmed.*

MR. JUSTICE JACKSON concurs in the result on the ground that the record before us does not show jurisdiction in the Florida court.

MR. JUSTICE FRANKFURTER, concurring.

Conflicts arising out of family relations raise problems and involve considerations very different from controversies to which debtor-creditor relations give rise. Such cardinal differences in life are properly reflected in law. And so, the use of the same legal words and phrases in enforcing full faith and credit for judgments involving the two types of relations ought not to obliterate the great difference between the interests affected by them, and should not lead to an irrelevant identity in result.

The constitutional policy formulated by the Full Faith and Credit Clause cannot be fitted into tight little categories or too abstract generalities. That policy was the nation-wide restriction of litigiousness, to the extent that States, autonomous for certain purposes, should not be exploited to permit repetitive litigation. In substance, the Framers deemed it against the national welfare for a controversy that was truly litigated in one State to be relitigated in another. Such limitation does not foreclose inquiry into what was litigated and what was adjudicated. The scope of the Full Faith and Credit Clause is bounded by its underlying policy and not by procedural considerations unrelated to it. Thus, in judgments affecting domestic relations technical questions of "finality" as to alimony and custody seem to me irrelevant

in deciding the respect to be accorded by a State to a valid prior judgment touching custody and alimony rendered by another State. See the concurring opinion in *Barber* v. *Barber*, 323 U. S. 77, 86, and the dissenting opinions in *Griffin* v. *Griffin*, 327 U. S. 220, at 236 and 248. Compare *Yarborough* v. *Yarborough*, 290 U. S. 202.

Which brings me to the present case. If there were no question as to the power of Florida to provide for the custody of this child in the manner in which the Florida decree of divorce did, I think New York would have to respect what Florida decreed, unless changed conditions affecting the welfare of the child called for a change in custodial care. New York could respond to such changed circumstances. The child's welfare must be the controlling consideration whenever a court which can actually lay hold of a child is appealed to on behalf of the child. Short of that, a valid custodial decree by Florida could not be set aside simply because a New York court, on independent consideration, has its own view of what custody would be appropriate.

Here the lower New York court did not provide for the child's custody on the basis of changed circumstances. While it professed to respect the Florida custody decree, the court acted as though it had independent authority because of the dispersion of the family. Its action seemed to be controlled by the father's right, on the assumption that that was the test of the child's welfare in the circumstances. The order of the lower court was affirmed by the Appellate Division, but that court specifically noted that it did "not adopt in their entirety the views expressed" by the court below. The intermediate tribunal was, in turn, affirmed by the Court of Appeals. Of course, if the Florida decree is entitled to no respect, it is not for us to upset the custodial provisions sanctioned by the highest court of New York. Although we are not afforded the guidance that an opinion would give as to

the considerations that moved the New York Court of Appeals to sustain the custodial decree, on the slim record before us I am not justified in finding that the New York Court of Appeals was unmindful of its duty under the Full Faith and Credit Clause to respect a valid Florida judgment.

In determining whether the New York judgment should stand or fall account must be taken of two competing considerations. There is first the presumptive jurisdiction of the court of a sister State—here Florida—to render the judgment for which full faith and credit is asked. The other is the power of a State court—here New York—which has actual control of the child to make provision for the child's welfare. Where, as here, both considerations cannot prevail one must yield. Since the jurisdiction of the Florida court in making the custodial decree is doubtful, New York was justified in exercising its power in the interest of the child. *Williams* v. *North Carolina*, 325 U. S. 226.

A close analysis of the precise issue before us seems to me to require this conclusion. The problem before this Court is the validity of a New York judgment providing for the custody of a child subject to its jurisdiction because within its power. It is our duty to sustain that judgment unless there is clear ground for upsetting it. Apart from the effect of what Florida had previously done, New York's authority to enter this judgment is unquestioned. New York's power is qualified only by her duty under the Full Faith and Credit Clause to respect a Florida judgment. But this duty arises only if there was legal power in the Florida Court to enter the custodial decree, and if in the Florida courts themselves the decree was not subject to the kind of modification which New York here made. On the basis of the meager record before us and in view of the uncertainties of Florida law, we do not have the necessary assurance that Florida had jurisdiction to issue the

custodial decree, or that the Florida courts could not enter a modifying decree precisely like the New York decree before us. So long as there is this uncertainty, we are not justified in finding that New York's judgment was vitiated because of a failure in her duty under the Full Faith and Credit Clause. A full record of the Florida proceedings in the light of applicable Florida law, more securely ascertained than by our independent inquiry, might lead to a different conclusion. As it is, I concur in affirmance of the judgment.

MR. JUSTICE RUTLEDGE, concurring.

I join in the judgment *dubitante,* in the view that under Florida law *res judicata* has no application to an award of custody[1] and the decree therefore is lacking in any quality of finality which would prevent the court rendering it, or another acquiring jurisdiction of the child's status, from altering it.[2]

The result seems unfortunate in that, apparently, it may make possible a continuing round of litigation over custody, perhaps also of abduction, between alienated parents. That consequence hardly can be thought conducive to the child's welfare. And, if possible, I would avoid such

---

[1] In *Minick* v. *Minick,* 111 Fla. 469, 491, the Florida Supreme Court quoted with approval the statement in Schouler on Marriage and Divorce (6th ed.) § 1896: "These judgments [of custody] are necessarily provisional and temporary in character, and are ordinarily not *res judicata,* either in the same court or that of a foreign jurisdiction, except as to facts before the court at the time of the judgment." See also *Meadows* v. *Meadows,* 78 Fla. 576.

[2] The trial court in New York gave lip service to observing the Florida award of custody to the mother, but awarded the father rights "of visitation" not allowed under the Florida decree; and these included not only visitation during specified hours while the child is to remain in the mother's custody, but also the right to have the custody during more than three months of each year, during which time the mother was given specified visiting rights. The New York appellate courts affirmed the award as made by the trial court.

a distressing result, since I think that the controlling consideration should be the best interests of the child, not only for disposing of such cases as a matter of local policy, as it is in Florida and New York,[3] but also for formulating federal policies of full faith and credit as well as of jurisdiction and due process in relation to such dispositions.

I am not sure but that the effect of the decision may be that the mother, once the child has been returned to Florida,[4] will then be able to secure another decree there nullifying the father's rights of visitation and custody given by the New York decree,[5] or that in such an event he might lawfully repeat the abduction and secure restoration of those rights in New York. If so, the effect of the decision may be to set up an unseemly litigious competition between the states and their respective courts as well as between parents. Sometime, somehow, there should be an end to litigation in such matters.

But our function here is limited to application of the full faith and credit clause. I agree that technical notions

---

[3] See Fla. Stat. Ann. (1943) § 65.14; *Jones* v. *Jones*; 156 Fla. 524, 527; *Green* v. *Green*, 137 Fla. 359, 361.

See *Matter of Rich* v. *Kaminsky*, 254 App. Div. 6; *Matter of Bull*, 266 App. Div. 290, aff'd, 291 N. Y. 792; see also N. Y. Domestic Relations Law § 70; *Finlay* v. *Finlay*, 240 N. Y. 429, 433.

[4] The New York judgment permits the mother to take the child to Florida during the time she is to have custody, see note 2, but requires her to give a surety bond conditioned upon her surrendering the child to the father at the beginning of the periods prescribed for his having custody.

The mother therefore consistently with the New York decree may lawfully remove the child to Florida. Once he is physically and lawfully present there, it would seem that the courts of that state would be able to acquire jurisdiction over his status and to make further awards concerning it, unless indeed personal service of process upon the father is required for that purpose.

[5] See notes 2, 4. The question would remain whether the Florida courts by making a further decree could relieve the mother of the compulsion of the surety bond.

of finality applied generally to other types of judgment for such purposes have no proper strict application to these decrees.[6]  But, even so, full faith and credit is concerned with finality and only with finality when the question arises in relation to the binding effects of judgments.   And the law is clearly settled that while generally the clause requires other states to give judgments as much effect as they have where rendered, it does not require them to give more.[7]

Accordingly, if the state rendering the judgment gives it no final effect to prevent its alteration, I am unable to see how others having jurisdiction of the parties and the subject matter may be required to give it finality in this respect by virtue of the provision for full faith and credit.[8] But this is what we would have to require, in view of the state of Florida law, in order to hold that New York could not make the changes which were incorporated in its judgment.

Whether Florida will be bound to observe those changes, in the event of another application by Mrs. Halvey, is a question upon which however I desire to reserve judgment, along with the other questions reserved in the Court's opinion.

---

[6] See the opinion dissenting in part in *Griffin* v. *Griffin,* 327 U. S. 220, at 247; also the concurring opinion in *Barber* v. *Barber,* 323 U. S. 77, at 86.

[7] Rev. Stat. § 905, 28 U. S. C. § 687, and cases cited in *Griffin* v. *Griffin,* 327 U. S. 220, 236, note 1.

[8] Commentators who have suggested that full faith and credit be given to custody decrees have assumed that such awards could be modified only on the basis of new facts occurring subsequent to the original custody decree. See, *e. g.,* Effect of Custody Decree in a State Other Than Where Rendered (1933) 81 U. Pa. L. Rev. 970, 972. As the opinion of the Court points out, the power of Florida to modify such a decree is not limited to change of circumstance. See also note 1.