EX PARTE ELLIOTT ET AL., MINORS.

(No. 6658—Decided August 29, 1961.)

*Messrs. Butler, Addison, Smith & Carmack,* for petitioner Eleanor Elliott Lawrence.

*Mrs. Clara S. Cory,* for respondent Harold Elliott.

DUFFEY, P. J.   This is an action in habeas corpus involving the right to custody of Charles and Vicky Elliott, minors.   The petitioner, Eleanor Elliott Lawrence, is the children's natural mother.   The respondent, Harold Elliott, is the natural father.

The parties here were husband and wife, and the children are the product of that marriage.   In October 1957, in Columbus, Ohio, they executed a separation agreement giving the mother custody.   The contract did not require the mother to remain in Ohio.   The mother left almost immediately with the children to live in Barbourville, Kentucky, being taken there by the husband's father.

About January 10, 1958, the father went to Kentucky, ob-

tained the children and returned to Columbus. The father claims that the mother was at that time neglecting the children and that he obtained the children with the mother's consent. However, the evidence before this court as to the circumstances is highly in conflict. The husband's version is contradicted by the mother and sister, and to some extent by a brother in law. The testimony of the only nonrelative does not substantiate the father's version.

Upon returning to Columbus, the father instituted a divorce action in the domestic relations division of the Common Pleas Court of Franklin County, Ohio. The action was filed on January 15, 1958. The mother was a minor at the time. She was served by publication. Subsequently, in March of 1958 she came to Columbus. No personal service of process was ever attempted. There is nothing in the evidence before this court which shows that the mother was ever brought within the personal jurisdiction of the Ohio court. On April 5, 1958, the court entered a decree granting the father a divorce, awarding him custody, and purporting to cancel and set aside the separation agreement.

The mother moved to Aberdeen, Maryland, shortly thereafter. She had several visits with the children, and, in January of 1960, with the father's consent, she obtained the children and took them to Aberdeen for a month's visit. She did not return the children, and in late January or early February the father went to Maryland.

The mother commenced an action for custody in the Circuit Court of Harford County, Maryland. The duly authenticated record of that proceeding shows a properly commenced suit, with process served by the sheriff upon the father's person by reading to him the subpoena, petition, affidavit and court order, and by giving to him copies of those documents. The return is dated February 2, 1960. A continuance was obtained by attorneys hired by and representing the father on February 4. The father was given temporary custody pending the hearing, and a bond of $1,000 was ordered. A $500 cash bond was later posted. The father returned with the children to Columbus. He had, while in Maryland, commenced a habeas corpus action in the same Maryland court against the mother, and she was properly served.

In the father's testimony, he admits being in Maryland on those dates, that he was represented by two attorneys and that the sheriff did read and leave with him copies of the documents. An answer and a motion were filed by his attorneys on February 26. The evidence shows that the father discharged his attorneys by letter dated June 28, 1960. The cases were consolidated and set for hearing prior to the discharge of the attorneys. Notice of the hearing was sent to the father, and he admits receiving the notice. The hearing was held August 25, 1960, and the father failed to appear, either in person or by counsel. The habeas corpus proceeding was dismissed. Evidence was submitted in the custody proceedings, and, on September 10, 1960, a decree was entered awarding the mother custody and support, forfeiting the bond, and giving the mother final judgment for the amount of the bond. There is no evidence of any appeal or other action being taken. Petitioner, the mother, brought the present action of habeas corpus in this court on December 9, 1960.

It is apparent, both on the facts in this case and on the law of Ohio, that the Ohio court did not have personal jurisdiction of the mother. The decree of that court was, therefore, not binding on the mother with respect to the cancellation of the separation agreement, nor with respect to her interest in the custody of the children. See *May* v. *Anderson* (1952), 345 U. S., 528; *Armstrong* v. *Armstrong* (1954), 162 Ohio St., 406. Both the facts of record here and the law applicable to the domicile of the children at the time of the Maryland proceedings makes the determination of that issue very difficult. Cf. Restatement of the Law of Conflict of Laws, at page 57. But it is clear that the mother was domiciled in Maryland; that the court had personal jurisdiction of both the father and the mother; and that at the commencement of the suit, and for some days thereafter, the children were physically present in Maryland, and they were released to the father in temporary custody under bond and court order to produce them for the hearing. The Maryland court, therefore, had jurisdiction to and did enter a valid final order. See the discussion in *Bowman* v. *Bowman* (1956), 101 Ohio App., 400. The father's deliberate refusal to produce the children for final hearing was both foolhardy and contumacious. There is some suggestion in the evidence that this was on the

advice of an attorney. If the attorney could justifiedly have assumed a lack of personal service upon the father, such advice would be proper. However, if the attorney was aware of the service, then any such advice by an attorney would exhibit incompetence, unethical practice and contumacious conduct on the attorney's part.

The effect on this court of the Maryland decree under the full faith and credit clause of the federal Constitution has not been clearly decided. Three United States Supreme Court cases bear on the matter. *New York, ex rel. Halvey*, v. *Halvey* (1947), 330 U. S., 610; *May* v. *Anderson, supra*; and *Kovacs* v. *Brewer* (1958), 356 U. S., 604. In the *Halvey* and *Kovacs cases*, the precise question involved here was reserved. But it is clear "that the state of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the state where it was rendered." See *Halvey, supra*, at 615, and *Kovacs, supra*, at 607. Unfortunately, neither party has acquainted us with the law of Maryland. Mr. Justice Frankfurter, in his dissent in the *Kovacs case*, appears to suggest that custody cases should be an exception to the doctrine of *res judicata* and to the effect upon judgments of the full faith and credit clause. Section 1, Article IV, United States Constitution. Some indication of a similar view is suggested by *Cunningham* v. *Cunningham* (1957), 166 Ohio St., 203, which was decided prior to the *Kovacs case*. See, also, the comments of the Wisconsin court in *Zillmer* v. *Zillmer* (1960), 8 Wis. (2d), 657, 100 N. W. (2d), 564.

However, the probable general rule is that a valid *in personam* final judgment of a sister state with respect to custody can not be modified or changed except pursuant to the law of the state rendering it, or upon proof of a change of circumstances. While the welfare of a child must be a "polestar," the fundamental function of a court is to render a decision. Judicial results cannot be made to depend upon a litigant's perseverance and monetary ability to litigate repeatedly. It would seem apparent that the doctrines of bar, collateral estoppel, and the full faith and credit clause are legal applications of that unavoidable truth. However, it must be conceded that it is not yet clear which of the two views will be finally accepted as the law in custody cases.

In the present case, the evidence thoroughly covers the relationship and events occurring since the separation agreement in 1957. The court, with the consent of counsel, has also been furnished reports on the present status of both the father and mother, prepared respectively by the staffs of the Common Pleas Court, Division of Domestic Relations, of Franklin County, Ohio, and the Juvenile Court, Circuit Court of Harford County, Maryland. In view of the uncertain status of the law, the quantity of previous litigation, and for the welfare of the children, this court feels it incumbent upon it to attempt a final disposition of this dispute. There have been at least two, or perhaps three, instances of improper removal or retention of the possession of these children. The present case is the fourth lawsuit filed. Such a situation places the children and the law in an intolerable position. Upon a review of the entire evidence presented, the briefs and arguments of counsel, this court finds that:

(1) The evidence does not establish that the mother neglected or improperly cared for her children in January of 1958, or at any other time.

(2) The Common Pleas Court of Franklin County did not obtain personal jurisdiction of the mother in the divorce proceedings of 1958.

(3) The Circuit Court of Harford County, Maryland, had personal jurisdiction of both the mother and the father; the children were personally present at the commencement of the suit and until at least February 5, 1960; the father knew he was under a court order to produce them for the final hearing, was notified of the hearing, did not produce them and failed to appear in person or by counsel.

(4) There has been no change of circumstances with respect to the mother's fitness or ability to care for these children since the Maryland decree of September 10, 1960, except as adds to her capacity to care for them.

(5) On the entire evidence, the mother is at present a fit person to care for the children, is capable of doing so, and, in the interest of the children, ought to be awarded their custody by this court.

It should be apparent that the determination of cases such as this is an unpleasant duty. There is no solution for the per-

sonal tragedy and social evil which is inherent in the present action.

The custody of the children is, therefore, awarded to the petitioner.

*Judgment accordingly.*

BRYANT and DUFFY, JJ., concur.