Thomas A. Aurelio, J.
Petitioner, by order to show cause, brought on this proceeding for an order of this court giving her custody of her infant son, Mark, who was six years old the 20th of June last. The parties were married in New York in 1950, and from time to time lived in California, Florida, and New York because of the requirements of the husband’s employment. In or about February, 1960, respondent husband was again transferred to Florida, and his wife, petitioner, and child remained in New York. On February 9,1960, petitioner entered Hillside Hospital in Long Island for the care and treatment of a mental illness diagnosed as schizophrenia, paranoic type. Shock treatments were administered. She remained in this hospital until June 19, 1960, when she was discharged as “ improved ”. The infant in the meantime was left in the care of her sister, Ethel Steiger, who resides in White Plains, New York. Petitioner had been twice before hospitalized for her mental illness, once in California for about one month, and once in Riverdale, New York, also for a month.
*81 It appears that a short time before June 20,1960, the infant’s birthday anniversary, respondent telephoned Ethel Steiger from Florida to request that he have the boy for his birthday, June 20. The request was granted and the boy was sent to Florida via airplane in charge of a hostess. Ethel Steiger testified that respondent had telephoned for the boy and that she granted his request on his promise to return him after his birthday. Respondent contends that Ethel Steiger suggested that he keep the boy with him. Ethel Steiger denies this. The boy was not returned and remained with his father in Florida. Thereafter, about January, 1961, respondent commenced a divorce action against his wife in Florida. Petitioner, through a New York lawyer, Mr. Louis J. Breaker, a cousin of hers, and a lawyer in Florida, engaged by Breaker, carried on negotiations with respondent’s lawyer in Florida in connection with the pending divorce action. As a result of these negotiations the parties entered into a written separation agreement dated February 14, 1961, which, pursuant to its terms, was incorporated in the divorce decree dated April 11, 1961, divorcing the parties from each other in the Florida court. The agreement, witnessed by Mr. Breaker, petitioner’s New York lawyer, required respondent to make certain cash payments to petitioner which have been made and further, it was agreed that respondent should have custody of the infant, an adopted child, except for the months of July and August of every year, when the infant was to be sent here to the mother for the Summer months and returned to the husband at the end of August. Each parent Avas also given the right to visit the infant at reasonable times when in custody of the other parent.
Paragraph “14” of the petition reads: “ The provision in the aforesaid separation agreement and decree between petitioner and respondent as to the custody of their child is harsh, unconscionable and unfair to the best interests of Mark; the limited right of visitation afforded petitioner prevents Mark from having the natural motherly affection, attention and care which a 6 year old boy should have; the existing arrangement for Mark’s custody, by Avhick he is deprived of the constant care and attention of his mother are so unnatural that they are inimical to his best physical and moral interests and to his proper development.”
In petitioner’s brief, page 10, it is also claimed that: “ The very terms of the separation agreement show that it was Avrung from the Avife by duress and fear and threats.”
There is no merit to any of these claims. On the contrary, I find and decide the agreement Avas freely, willingly and deliber *82 ately entered into by petitioner with the aid and guidance of counsel, and apparently with the approval of her family. The record does not support the claim of duress and threats. In the circumstances here involved, I find the agreement was fair and reasonable.
Two psychiatrists testified on petitioner’s behalf: Dr. William P. Benjamin, a staff member of Hillside Hospital, who cared for petitioner and supervised her treatment while in the hospital; and Dr. Ralph Olemments, director of the psychiatric clinic of the Court of Special Sessions. Both doctors testified that the mother was a fit and proper person to take care of the child and that the child’s best interests would be served by being with the mother despite her previous illness. Each psychiatrist, however, qualified his answer by limiting his opinion as to fitness to “at this time ”. Moreover, Dr. Benjamin testified he had not seen petitioner since she left Hillside Hospital 15 months ago, and Dr. Olemments testified he saw her once only for an hour and a half on the day he appeared in court.
Respondent testified that he resides in Shalimar, Florida, where he occupies a five-room house on G-arniers Bay, and the only one residing there other than the infant is the housekeeper, Mrs. Florence Higgins, a widow about 57 years of age, who has a married son and daughter who reside in town, and that she is well able to properly take care of the infant while he is at work. I am satisfied that this is so and that the child will be in good hands.
Upon the entire record before me I conclude that it will be in the best interests of the safety and welfare of the infant to remain in the custody of his father at this time. In petitioner’s brief, page 6, it is stated: “ Under any circumstances, the father should be required to give a bond assuring the return of the child to this state whenever so required.” (People ex rel. Halvey v. Halvey, 185 Misc. 52, 55, affd. 269 App. Div. 1019, affd. 295 N. Y. 836, affd. 330 U. S. 610.)
To alleviate any fears petitioner may have in this respect, respondent will be required to give a bond in the sum of $1,000.
Since counsel fees are not allowable in a custody proceeding like this, the application is denied.
Accordingly, petitioner’s application for custody of the child is denied, the stay vacated, petition is dismissed, and petitioner is directed to restore custody of the infant to respondent forthwith.