Stanley Gartenstein, J.
This proceeding pursuant to section 384 of the Social Services Law to free the two subject children for adoption presents a unique question of law grounded in the public policy of the State of New York as it implements the jurisdictional guidelines set by the Supreme Court of the United States in Halvey v Halvey (330 US 610) and May v Anderson (345 US 528). The seminal case in this State, Matter of Bachman v Mejias (1 NY2d 575) is not dispositive of this issue which may be delineated in brief thusly: Does the physical absence of the children from this State at all stages of these proceedings deprive this court of jurisdiction to determine their guardianship and custody? (i.e. free them for adoption). As a derivative issue, the court is presented with the question of whether or not the reference to "custody” in Supreme Court and New York Court of Appeals decisions may be construed to include "custody” as referred to in section 384 of the Social Services Law, the relevant portion of which follows: "6. If both parents of a destitute or dependent child are dead, and no legal guardian of the person of such child has been appointed, and no guardian has been appointed by will or by deed by either parent thereof or if the parent or parents whose consent would otherwise be required under this section have abandoned such child for the period of six months then next preceding, the guardianship of the person and the custody of such child may be committed to an authorized agency by order of the surrogate or family court judge of the county in which such authorized agency has an office for the regular conduct of business, on such notice to such persons as the surrogate or judge may in his discretion prescribe.”
The relevant underlying facts follow: In November 1971, both subject children were placed in voluntary foster care upon execution of the requisite consent documents. After efforts to reunite the family and/or arrange a meaningful course of visitation, all of which failed because of the refusal *1021 of the mother and stepfather to co-operate and/or formulate realistic plans for their return, the agency charged with the care of the boys as subcontractor to the Department of Social Services, made arrangements to send them to live with excellent foster parents in South Carolina with the approval, and concurrence of the Commissioner of Social Services, the children’s statutory custodian. This took place in November, 1973, some two years after the children were so placed, only after efforts to interest the respondents sufficiently to move them off dead-center failed. Throughout this time, and continuing through the planned move to South Carolina, respondents failed, refused and neglected either to reassume responsibility for the children on the one hand, or to permit meaningful permanent planning for them on the other. The court finds that they had adequate notice of this move; that they failed and refused to intervene even then; that they acquiesced in it; and are now estopped from attacking its validity. The requirements of the statute (i.e. six months of abandonment) were by the time the children left the State, more than fulfilled. It might be added parenthetically that these respondents always lived at the same address; had adequate facilities to care for the children; and, in fact, willfully failed and refused to cooperate with the agency toward their return wholly and solely because of hostility to the agency and its social workers. For this reason alone, the respondents failed to visit their children and/or plan adequately for their return for a period well in excess of the statutory time other than to advance dark threats of nebulous "investigations” they would instigate and dire consequences, never fully spelled out, to follow.
In addressing itself to the question of jurisdiction, the court notes that all persons having any interest whatsoever in the custody of these children are domiciliarles of the State of New York and before the court. This immediately distinguishes the seminal cases of Halvey, May and Bachman (supra), by the fact that in these matters, as well as in every landmark case reaching the United States Supreme Court, the adverse parties litigating custody of the subject children were from different jurisdictions, each representing, so to speak, in a surrogate capacity, the law and/or sovereignty of a sister State. These situations, therefore, crystalized into an enactment of the almost prophetic concurring opinion by Mr. Justice Rutledge in Halvey (supra, pp 619-620) to the effect that "The result seems unfortunate in that, apparently, it may make possible a *1022 continuing round of litigation over custody, perhaps also of abduction, between alienated parents * * * [and] * * * set up an unseemly litigious competition between the states and their respective courts as well as between parents”. (See, also, Stout v Pate and Pate v Stout, 347 US 968.)
In this matter no issue of constitutional conflict of laws jurisprudence is presented. As counsel for petitioner astutely points out, while Matter of Bachman v Mejias (1 NY2d 575, supra) holds that physical presence within the State confers jurisdiction, there is no holding to the effect that absence destroys it. The United States Supreme Court has in fact twice declined to decide this very question. (Kovacs v Brewer, 356 US 604; Halvey v Halvey, 330 US 610, supra.) The "reverse” argument as to Bachman’s import is further bolstered by Matter of Lang v Lang (9 AD2d 401, affd 7 NY2d 1029) in which a foreign custody decree governed by the principle of comity, as opposed to full faith and credit governing sister State decrees, was recognized although rendered under circumstances wherein the child was not physically within the jurisdiction of the rendering forum. (See, also, Matter of Turner v Ratnoff, 78 Misc 2d 878.)
One gap in this process of reasoning appears to remain from a review of the foregoing authorities, viz., does the court have jurisdiction to render a custody decree when all parties having any interest therein are before it and the child is without the jurisdiction in a State whose adjudication, if and when forthcoming, would be entitled to constitutional full faith and credit as opposed to the comity extended in Lang, supra? The holding of this court is in the affirmative. We can see no difference in an absence of physical presence occasioned by actual presence in any jurisdiction, be it a foreign one or one of a sister State.
The court further holds, as a corollary of the above, that the frame of reference of the United States Supreme Court and the New York Court of Appeals in reference to "custody” as a legal word of art, includes "custody” as contemplated by section 384 of the Social Services Law in abandonment proceedings.
We make no ruling herein concerning the question as to whether or not removal from the State of the infants so prejudiced the rights of respondents that a statutory abandonment could not be held to have taken place inasmuch as we have factually found (a) that respondents impliedly consented *1023 to the removal and/or are estopped from attacking it; (b) that the same pattern continued after removal without efforts by respondents to see the children or ascertain their whereabouts; (c) that these proceedings were diligently commenced almost immediately thereafter.
Nor does the court address itself to the application that it consider the evidence in the alternative as having established permanent neglect pursuant to section 611 of the Family Court Act inasmuch as the holding herein renders said question academic.
The court notes the thoroughly professional conduct of these proceedings by counsel for both sides which served to bring the issues herein into immediate focus.
Both petitions granted on their merits on the facts and law.