142 N.J. Super. 312 (1976)
361 A.2d 554
HENRY MROWCZYNSKI AND CATHERINE MROWCZYNSKI, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
KATHLEEN MROWCZYNSKI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 10, 1976.
Decided June 28, 1976.
*314 Before Judges CARTON, CRAHAY and HANDLER.
State Office of Legal Services, attorney for appellant (Ms. Phyllis G. Warren, Staff Attorney on the brief).
Mr. Martin F. McKernan, attorney for respondents.
The opinion of the court was delivered by HANDLER, J.A.D.
This is a child custody case brought by the paternal grandparents to enforce an order for temporary custody pursuant to a decree of a Florida court. A hearing was held for the limited purpose of determining whether defendant, the child's natural mother, had been subject to the jurisdiction of the Florida court and whether there was any basis for invoking the jurisdiction of the New Jersey court to determine and award custody. The trial judge entered an order granting temporary custody to plaintiffs on the basis of the Florida decree but stayed that order pending appeal.
It appears that defendant and her husband (who is not a party in this suit) were married in New Jersey in 1970 and moved to Florida late in 1971. There they lived at the home of plaintiffs, defendant's in-laws, for about five months before moving to their own apartment and eventually to their *315 own house. Their son was born in March 1972, shortly before they left plaintiffs' home.
According to defendant, her relations with her husband and his family were most difficult. In March 1973, because her husband allegedly beat her during a family fight, defendant took her child and went to her mother's home in New Jersey. She stayed in New Jersey a month until her husband telephoned from Florida, telling her to "come on back; things are going to work out." When defendant and her child arrived in Florida they were met by her husband, who drove them to their house. She testified that when she went inside she noticed that the house had been virtually stripped bare of its contents. Her husband, who had been holding the baby, took him and drove off, leaving her in the empty house. A few moments later a sheriff's officer arrived and served her with a summons and complaint for divorce. Apparently her husband had also obtained an ex parte order granting him custody of their child.
A reconstruction of the ensuing procedural history is essential. It seems a hearing was held on April 23, 1973, shortly after defendant's arrival in Florida, at which the court ordered defendant's husband to return the child to defendant and also to restore the contents of their house, and to make support payments. By order dated August 8, 1973 the Florida court modified its previous order or orders and granted full custody to the husband; it provided that defendant was to have custody one day a week on her day off, and two evenings a week from 5 to 8 P.M. She was also ordered not to remove the child from the jurisdiction of the court. Thereafter, on September 10, 1973 the husband was held in contempt for denying defendant's visitation rights. On September 24 the court granted a motion of defendant to vacate the August 8 order and again ordered defendant's husband to make support payments; it also stated that the issue of custody would be determined at a hearing that day. A hearing was later held, and on October 5, 1973 the court awarded custody to defendant. *316 Visitation rights were granted the husband, although there was no specific prohibition against removing the child. It was further ordered that in the event defendant could not obtain sufficient financial assistance from her mother in order to quit her job, or her mother could not come to Florida (presumably to care for the child while defendant was at work), the child should be with the husband's family during defendant's working hours. Again the husband was found in contempt and sentenced to ten days in jail, but that sentence was stayed for 24 hours to give him an opportunity to make the support payments as ordered. Shortly thereafter, on October 17, the court again found the husband in contempt for failure to make payments for support and attorney's fees as previously ordered. He was given two days to comply or face incarceration. On October 26 defendant's motion to strike her husband's pleadings was granted "for the reason * * * that the husband had been in continuous and flagrant contempt of the orders of this court." Custody was ordered to remain in defendant subject to her husband's visitation rights, conditioned, however, upon payment of the arrearages.
Defendant then left with her child to come to New Jersey. At approximately the same time plaintiffs moved to intervene in the Florida proceedings and petitioned for custody. Defendant, though absent, apparently filed opposing papers (which do not appear in the record). On January 15, 1974 the court granted plaintiffs' motion to intervene and determined that defendant was "willfully and deliberately secreting" the child in defiance of the court's order of August 8, 1973 not to remove him from the jurisdiction of the court. (The court possibly overlooked the fact that the August 8 order had been vacated or supplanted by its orders of September 24 nd October 5, 1973). It ordered the child surrendered on January 21, 1974 or it would issue a fugitive warrant for defendant's arrest and extradition. All the arrearages and future support payments were suspended.
*317 Defendant did not surrender the child and on February 5, 1974 the court adjudged defendant to be in contempt of both its August 8 and January 15 orders, and seemingly on that basis, found that her actions "are detrimental to the health and welfare of the minor child * * *" and that she is an unfit mother. It proceeded to award temporary custody to plaintiffs, finding that they are suitable guardians and again stating "[i]t is the Court's opinion based on its observation of the wife that she is not a fit and suitable parent and it is detrimental to the health and well-being of the minor child to remain in his mother's care." The State's attorney was ordered to issue an arrest warrant for defendant and to seek extradition if necessary. Plaintiffs then brought this action to enforce that Florida order of February 5[1].
The trial judge ruled that defendant had subjected herself to the jurisdiction of the Florida court and that there was no reason for the New Jersey court to intervene, there being no "substantial change * * * other than the advancement of the age of the child and the maturity attending therewith." Accordingly, he directed the return of the child to plaintiffs in accordance with the Florida decree awarding temporary custody pending a determination of the issue of permanent custody by that court.
It is argued by defendant that the orders of the Florida state court are not entitled to "full faith and credit" because personal jurisdiction over defendant was "fraudulently procured." Much is made of the husband's alleged trickery in luring defendant into the state to obtain personal service of process. Defendant asserts that her submission to the *318 Florida court was based on duress; that she was in fact compelled to appear because her husband had her child, leaving her no real option to challenge the jurisdiction of the Florida court as a proper forum. Therefore, it is claimed, she should not be deemed to have waived any jurisdictional defect.
A collateral attack on a judgment rendered by the courts of another state for lack of personal jurisdiction is barred where the party appeared therein without objection. See Restatement, Judgments, § 19; Restatement, Conflict of Laws 2d, §§ 33; 104; Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948); cf. Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931); Lea v. Lea, 18 N.J. 1 (1955). It is not disputed that defendant answered and appeared in the Florida action and it has not been shown that she asserted by way of defense in those proceedings any defect in the court's jurisdiction over her. Indeed, she actively participated in the proceedings before the Florida court. Hence, the court below correctly found that defendant was not entitled to attack the jurisdictional foundation of the Florida decree.
It is doubtful, nevertheless, that the provisions of the Florida custody order would be enforceable in this State solely by virtue of the full faith and credit clause. Judging from the history of the Florida proceedings, wherein the provisions for custody were frequently amended, it seems clear that such an order would be subject to modification by the Florida court itself and therefore modifiable by a New Jersey court. New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947); Kovacs v. Brewer, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958); Salmon v. Salmon, 88 N.J. Super. 291, 303-304 (App. Div. 1965); cf. Bachman v. Mejias, 1 N.Y.2d 575, 154 N.Y.S.2d 903, 136 N.E.2d 866 (Ct. App. 1956). Though the terms of the Florida court were not immutable, the trial judge gave deference to the decree through considerations *319 of comity. The issue, therefore, is whether under all of the circumstances the trial judge properly determined for reasons of comity that the custody controversy be remanded to the Florida court. We think not.
There is no question that the New Jersey court has jurisdiction to determine custody. The actual presence of the child in New Jersey is a sufficient basis for the courts of this State to determine custody. Fantony v. Fantony, 21 N.J. 525, 536 (1956); Vannucchi v. Vannucchi, 113 N.J. Super. 40, 46 (App. Div. 1971); Casteel v. Casteel, 45 N.J. Super. 338 (App. Div. 1957). Jurisdiction alone  the power to adjudicate  does not, however, dictate that the court should in a given case entertain the action and resolve a custody dispute which had its genesis in the courts of another state. The rule has been stated that "where there is a voluntary submission to a foreign jurisdiction there is no ground for intervention by New Jersey courts, unless there is a special equity justifying such relief notwithstanding the appearance." Stultz v. Stultz, 15 N.J. 315, 319 (1954); Vannucchi v. Vannucchi, supra, 113 N.J. Super. at 46. The policy served by this rule has been thus expressed: a court should not exercise jurisdiction to determine custody, though within its power, "as a means to obstruct the judicial processes of a sister state when that state has previously acquired jurisdiction to pass on the issue of the infant's custody. To permit it to be used for such a purpose would sanction a race to the court houses of different states and a multiplicity of litigation." Vannucchi v. Vannucchi, supra, 113 N.J. Super. at 47.
In Vannucchi, relied on by plaintiffs, the parents were married in New York, lived for a short time in New Jersey, where the child was born, and moved to Illinois. Thereafter, marital problems arose and the husband went to his parents' home in New Jersey. The wife at that time (January 1968) brought an action for divorce in Illinois and the husband entered a general appearance. The Illinois court awarded temporary custody to the wife. During the *320 pendency of that action the husband in June 1968, with his wife's consent, brought the child to New Jersey, but later failed to return it as agreed. On September 5, 1968 he brought an action in the Chancery Division seeking custody and an injunction restraining his wife from proceeding in the Illinois divorce action. The Chancery Division denied the injunction but awarded custody to the husband. This court reversed the custody award, finding that the husband, having submitted to the jurisdiction of the Illinois court, cannot bring an action designed primarily to obstruct it in the courts of New Jersey. The court also found no intervening substantial change.
In the present case, by contrast, it appears that the defendant's appearance in the Florida proceedings was not entirely voluntary. If defendant were brought before the Florida courts by a ruse, it can hardly be said that her return to New Jersey was not in good faith or motivated solely by a search for a hospitable forum. The record, as we view it, supports the conclusion that her departure from Florida was for understandable and valid personal considerations.
Defendant testified at the hearing below that in the period after her return to Florida she was continually harassed by her husband and his family. Her claim that she was denied visits with her child is substantiated by the court order of September 10, 1973 finding her husband in contempt for denying visitation rights. Defendant stated that she left Florida because of the trouble she was suffering at the hands of plaintiffs and her husband and because she could not afford to live in Florida without the court-ordered support which her husband had refused to pay with seeming impunity. It is evident from the very orders issued by the Florida court that defendant was sorely treated by her husband. She was isolated and left in serious financial straits by her husband who was grossly contemptuous throughout.
*321 Defendant denied that she sought to evade the jurisdiction of the Florida courts by coming to New Jersey. It is completely believable that her motive in leaving Florida was not to avoid the onus of the Florida court or to reach a judicial sanctuary in New Jersey. The Florida court had not been hostile to defendant's plight, and indeed, defendant had met with some success in vindicating her position before that court. It thus appears that defendant returned to New Jersey with her child for bona fide reasons  to escape an intolerable personal situation and to ameliorate her life by returning to her family in New Jersey.
The circumstances surrounding jurisdiction as originally acquired and exercised by a foreign court, though unassailable by virtue of an appearance and participation in the proceedings, bear upon the inquiry of whether there is a "special equity" justifying abstention by another court. The trial judge did not properly assess this issue. He concluded the issue upon the simple finding that defendant had waived any objections to jurisdiction. In failing, however, to consider the totality of circumstances surrounding the jurisdiction of the Florida court  the route by which defendant came before that court as well as her reasons for leaving that jurisdiction  the judge did not give sufficient or appropriate weight to this constituent element in his consideration of the complex and sensitive issue of comity.
Ultimately the trial judge assigned dispositive value to the factor of whether there was an intervening change of circumstances justifying the retention of jurisdiction by New Jersey. He concluded that there was not. The judge, we hold for the reasons already expressed, was mistaken in giving this factor such dominant weight in resolving the issues of comity. He also erred in finding that the situation affecting the child's welfare had not changed sufficiently to warrant the intercession of the New Jersey court.
The child was less than two when defendant brought him to New Jersey in December 1973. He is now more than four. *322 The expert testimony as to the potential harm which would ensue from removing a child of that age from his mother in whose sole care he had been for so long was sound. It is true that the psychiatrist did not spend much time interviewing defendant or taking a history from her or other relatives. This does not seriously weaken his opinion, however, since the child was apparently normal and he stated that under such circumstances there would plainly be undesirable and detrimental effects in taking a child from his mother. There is no basis, moreover, on the present record to conclude that defendant would be demonstrably unfit to retain custody of the child pending a determination of permanent custody. It appears that the Florida court's finding that defendant was unfit was based largely, if not entirely, on her putative contempt. That court, we point out, had previously found defendant fit to have custody during the pendency of the proceedings.
We conclude, therefore, under these circumstances a determination of custody by the courts of this State will be in the best interests of the child and will not offend principles of comity and judicial statesmanship. In the context of this case, that course of action will not frustrate the legitimate interests of a sister state or obstruct and subvert the jurisdiction of another court. It may be noted in passing, since the taking of this appeal, the Florida court has granted a divorce between defendant and her husband but expressly refrained from adjudicating the custody issue pending resolution of this application in the New Jersey courts. Additionally, in the circumstances present, action by the New Jersey court to resolve the issue of permanent custody will not encourage a proliferation of law suits or the unseemly search for a supposedly sympathetic court contrary to the judicial respect which courts owe one another.
Accordingly, the judgment below is reversed and the matter remanded for a plenary hearing on the issue of custody.
NOTES
[1] At the hearing below it was stated that defendant had surrendered herself on the fugitive warrant and was free on bail. Apparently she was wanted not only for contempt but had also been indicted for "secreting a child from the court," a "third-degree felony" in Florida. Her counsel represented to the court that the extradition warrant was being held by the Governor pending the outcome of this case, and that she will not be extradited if she prevails.