OPINION OF THE COURT
Stanley Gartenstein, J.
One point of law and one object lesson emerge from the interstate custody dispute now before the court.
THE LAW
We hold that an order of referral from the Supreme Court of a writ of habeas corpus addressed to custodial detention on an out-of-State fugitive warrant cannot confer jurisdiction upon the Family Court. Accordingly, we respectfully decline subject matter jurisdiction over . same.
THE LESSON
The prospective incarceration of the petitioning father herein on a fugitive warrant pending extradition, regardless of the ultimate outcome of that matter, should serve *624 notice to the Bar and prospective litigants that the days of spiriting children across State lines to litigate custody are over. After nearly 50 years of living with this practice and the untold misery it brought, the separate States have finally enacted a law with teeth.
THE FACTS
Margaret Y. (Mother), a resident of Arapahoe County, Colorado, was awarded custody of the subject children herein, Gil and Naamen, by decree of the District Court of Denver, State of Colorado, entered on December 11, 1980. The children have resided with her since that time. The father is a resident of Queens County, State of New York.
Sometime during January, 1982, the Mother came to New York to litigate an action for personal injuries. In doing so, she left the children with their maternal grandmother in Colorado. The grandmother apparently ran a tight ship in terms of parental supervision and when Gil, the older child, disobeyed her rules and failed to come home one weekend, he mounted a transparent campaign to escape her no-nonsense discipline by contacting his all-too-willing father in New York. Seeing an opportunity to relitigate custody, the father wired airline tickets to New York for both boys and this custody proceeding before us was commenced with lightning speed.
Commendably, the State of Colorado takes its own statutes seriously. When the scheme came to light, a felony warrant for custodial interference came over the teletype to the New York police who arrested the petitioning father herein. On the original return date of the custody proceeding, his counsel appeared and advised the court of this arrest , coupling his statement with a claim that an Assistant District Attorney of this county had purportedly represented to him that the police would release the father to this court upon its request. The court refused to interfere in an interstate extradition over which sole and exclusive jurisdiction rests in the criminal courts (CPL art 570) and adjourned its own proceedings to permit appropriate applications to be made in the Supreme Court. On the adjourned date, the parties appeared as did an Assistant District Attorney of this county and the warrant officer. It was then *625 reported to the court that a writ of habeas corpus addressed to the father’s detention on the fugitive warrant had been brought in the Supreme Court and referred to this court for disposition. No formal order from the Supreme Court was presented and we must therefore presume that the “order” was an oral direction to litigate all the issues in this court. In either event, we are constrained to decline jurisdiction.
EXTRADITION PROCEEDINGS ON FUGITIVE WARRANT
As a matter of law, extradition proceedings fall within the exclusive jurisdiction of the criminal courts (CPL art 570). A corollary of this jurisdiction is the authority to admit a defendant to bail on a fugitive warrant which is reserved exclusively to the superior criminal court, in this instance, the Supreme Court (CPL 570.38). A defendant’s liberty may also be secured via a writ of habeas corpus (CPL 570.24) which may only originate out of the following (CPLR 7002, subd [b], pars 1-4): (a) Special Term of the Supreme Court; (b) the Appellate Division in the department of detention; (c) any Justice of the Supreme Court; (d) a County Judge residing in the county of alleged detention. On the return of a writ of habeas corpus so issued, there are three possible authorized statutory dispositions (CPLR 7010): (a) discharge; (b) bail; (c) remand. None of these alternatives give the hearing court the authority to refer the issue elsewhere. We look therefore to the only statutory authorization for referral of a writ of habeas corpus elsewhere. This is contained in section 651 of the Family Court Act, the relevant provision of which is subdivision (a) reading as follows:
“§651. Jurisdiction over habeas corpus proceedings and petitions for custody of minors
“(a) When referred from the supreme court or county court to the family court, the family court has jurisdiction to determine, with the same powers possessed by the supreme court in addition to its own powers, habeas corpus proceedings and proceedings brought by petition and order to show cause, for the determination of the custody of minors.” (Emphasis added.) Clearly, the proceeding before the Supreme Court was solely and exclusively concerned with a fugitive warrant. Even where the underlying *626 crime has tangential reference to issues involving custody, those issues cannot change the basic character of the extradition proceedings or the exclusive jurisdiction of the Supreme Court. There being no statutory authority for “reference” to this court, we respectfully decline jurisdiction.
DISMISSAL UNDER UNIFORM CUSTODY STATUTES
The purposes of the uniform custody statutes which have been enacted in New York are to: avoid jurisdictional competition between the States; assure that litigation concerning the custody of a child take place in the State with which the child and his family have the closest connection; deter unilateral removals of children to obtain custody awards; avoid relitigation of custody decisions by other States; facilitate enforcement of out-of-State custody decrees.
It is clear that custody has been litigated in Colorado. Concededly, the home State of the subject children is Colorado (Domestic Relations Law, § 75-d). Finally, and perhaps most important in terms of the thrust of the new law, these children find themselves in this jurisdiction under circumstances spelling out a thinly disguised unilateral removal from their home State in order to relitigate their custody here. (Domestic Relations Law, § 75-b, subd [e].) In view of these overwhelming factors mitigating against assumption of jurisdiction in this State, the only tenuous theory on which the father may rest his case is that of clear and imminent emergency (Domestic Relations Law, § 75-d, subd 1, par [c], cl [ii]). With regard to this exception to the clear public policy of this State deferring to out-of-State decrees, this department of the Appellate Division has stated: “The emergency basis for acquiring jurisdiction requires that the movant demonstrate that the child will somehow suffer emotionally or physically if jurisdiction is not exercised.” (Gomez v Gomez, 86 AD2d 594, 596.)
The court’s in camera interview with both children indicates that the leadership of the older boy in lending himself to his father’s scheme is based mainly on a desire for the spotlight (which he has achieved) coupled with a *627 wish to avoid his grandmother’s old-fashioned discipline for his inexcusable absence from her home (one now sincerely doubts that he will realize fulfillment of this wish). No remote hint of any actual or imagined emergency exists.
This proceeding is dismissed.
EPILOGUE
Upon the dismissal on record in open court prior to the filing of this formal opinion, the warrant officer accompanying the Assistant District Attorney was instructed by him to execute the fugitive warrant as soon as the parties left the immunity of the courtroom proper. In said extradition proceeding, if not admitted to bail by the Supreme Court, the father would remain on remand therein for a period of up to 60 days while the criminal courts await a Governor’s warrant of extradition. In either event, as a fugitive from the justice of the State of Colorado, he must be turned over in due course to that State which has indicated its eagerness to prosecute on the underlying felony. The decisive co-operative action of two States to insure that this statutory scheme will not be manipulated contrasts sharply with the chaos which followed Supreme Court holdings which all but destroyed the full faith and credit clause of the United States Constitution when custody was at stake (cf. Halvey v Halvey, 330 US 610). In 1937, Mr. Justice Rutledge speaking of the Supreme Court’s decision in Halvey accurately prophesied: “The result seems unfortunate in that, apparently, it may make possible a continuing round of litigation over custody, perhaps also of abduction, between alienated parents. That consequence hardly can be thought conducive to the child’s welfare. * * * [T]he effect of the decision may be to set up an unseemly litigious competition between the states and their respective courts as well as between parents. Sometime, however, there should be an end to litigation in such matters.” (Halvey v Halvey, 330 US 610, 619-620.) The chaos which followed Halvey reached its low point in Stout v Pate (347 US 968) and Pate v Stout (347 US 968) where the courts of Georgia and California handed down inconsistent decrees within months, each case having been litigated on the merits, and each court having been apprised *628 of a contrary decision by the other. Nevertheless, the Supreme Court denied certiorari in each case. It took almost 50 years for the separate States to close these gaps by enacting remedial legislation. A clear object lesson may be found in Mr. Y.’s present predicament to serve as a caveat to all persons considering manipulation of the custody laws to the effect that the days of parental kidnapping are over; that the separate States mean to have no repetition of the chaos which prevailed for too long. Mr. Y.’s circumstances are unfortunate but nonetheless instructive to all persons who feel they can outsmart the new statutory scheme.