Michael WILLIAMS and
Connie Williams

v.

GENERAL MOTORS CORPORATION.

No. CV392–037.

United States District Court,
S.D. Georgia,
Dublin Division.

March 8, 1993.

James E. Butler, Jr., Robert David Cheeley, Patrick Alan Dawson, Butler, Wooten, Overby & Cheeley, Atlanta, GA, for plaintiffs.

Andrew T. Bayman, Robert D. Hays, Robert Hutton Brown, King & Spalding, Atlanta, GA, Alexander Dimitrief, John T. Hickey, Jr., Kirkland & Ellis, Chicago, IL, for defendant.

## ORDER

BOWEN, District Judge.

Plaintiffs in the above-captioned matter request this Court to review the order entered by the Magistrate Judge on December 23, 1992, which denied Plaintiffs' Motion to Permit the Deposition of Ronald Elwell. Defendant has filed opposition. Upon review of the record, and after careful consideration, the Court reverses the Magistrate Judge's order for the reasons set forth below.

## BACKGROUND

This diversity action for products liability arises out of a automobile accident. Plaintiffs contend that Michael Williams was permanently paralyzed due to the failure of a seat belt and door latch on his 1985 Chevrolet S–10 Blazer manufactured by Defendant General Motors Corporation (GM). Plaintiffs now seek to depose Ronald Elwell, who is believed to have knowledge of facts regarding seat belt failures and a type of door latch which GM uses in some vehicles.

GM identifies Mr. Elwell as "a former litigation consultant at General Motors who served for more than 18 years as an integral member of General Motors' products liability defense team." (Opposition to Plaintiffs' Motion for Review at 1.) According to GM, "Elwell's primary responsibility during his tenure at General Motors was to assist General Motors' legal staff and outside counsel in virtually all aspects of defending products liability litigation involving the fuel systems of General Motors vehicles." (*Id.* at 2–3.) Elwell and GM eventually fell out of each other's favor, however, and Elwell sued GM in Michigan state court; GM counter-sued Elwell to prevent him from testifying against GM in products liability cases. The parties negotiated a settlement, and the Michigan Court entered an abbreviated order dismissing Elwell's complaint and granting permanent injunctive relief to GM.

The Michigan court's injunction is of two parts: the first enjoins Elwell from

> consulting or discussing with or disclosing to any counsel or other attorney or person any of [GM's] *trade secrets, confidential information or matters of attorney-client privilege or attorney-client work product* relating in any manner to the subject matter of any litigation ... which ... Elwell received or had knowledge of during his employment with [GM]....

*Elwell v. General Motors Corp.*, slip op. at 2, No. 91–115946NZ (Wayne County, Mich.Cir. Aug. 26, 1992) (emphasis added). The second prohibition is even broader: it purports to enjoin Elwell from testifying either upon deposition or at trial "as a witness of *any kind*, and from consulting with attorneys or their agents ... in *any litigation* ... involving [GM] as an owner, seller, manufacturer and/or designer of the product(s) in issue," without the prior written consent of GM. *Id.* at 2–3 (emphasis added).

GM seeks to enforce the Michigan injunction in this case. The Magistrate Judge denied Plaintiffs' Motion to Permit Deposition and, "[a]bsent a clear showing that Elwell's deposition testimony [would] not violate the terms of the earlier injunction," granted GM's Motion for Protective Order, based upon the Michigan injunction. (Order Dec. 23, 1992, at 4.) Plaintiffs now appeal.

## ANALYSIS

Federal rules of procedure generally govern discovery in civil cases in the federal courts. *See* Fed.R.Civ.P. 26. Deposition of witnesses may proceed as permitted at trial under the provisions of the Federal Rules of Evidence. Fed.R.Civ.P. 30(c). As to evidentiary privileges, Fed.R.Evid. 501 specifies that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." "[I]t makes no difference whether the supposedly privileged matter is direct or circumstantial evidence of a state claim; if it is in a line of proof that culminates in an element of a state claim or defense, then state rules of privilege apply." 23 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5434, at 860–61 (1980). If GM were merely asserting a privilege, therefore, a straightforward resort to the applicable state law of

privileges would govern the question. GM, however, seeks to enforce a Michigan court order to entirely preclude deposing Mr. Elwell. The Court must therefore look to the provisions of the Full Faith and Credit Clause of the United States Constitution for further guidance.

Article IV, § 1 of the Constitution provides that "Full Faith and Credit shall be given in each State to the ... judicial Proceedings of every other State." "The Full Faith and Credit Clause does require each State to give effect to official acts of other States. A judgment entered in one State must be respected in another provided that the first State had jurisdiction over the parties and the subject matter." *Nevada v. Hall,* 440 U.S. 410, 421, 99 S.Ct. 1182, 1188, 59 L.Ed.2d 416 (1979). Nevertheless, "the Full Faith and Credit Clause does *not* require a State to apply another State's law in violation of its own legitimate public policy." *Id.* at 422, 99 S.Ct. at 1189 (emphasis added); *see also Pacific Employers Ins. Co. v. Industrial Accident Comm'n,* 306 U.S. 493, 502, 59 S.Ct. 629, 633, 83 L.Ed. 940 (1939) (citing cases limiting application of Full Faith and Credit Clause). Although GM cites *Boyer v. Korsunsky, Frank, Erickson Architects, Inc.,* 191 Ga.App. 549, 382 S.E.2d 362 (1989), for the proposition that the Full Faith and Credit Clause requires Georgia courts to give effect to a sister state's judgment despite a clear violation of Georgia's public policy, the Georgia court's interpretation is contrary to the clear import of *Nevada, Pacific Employers,* and the cases cited therein, and is not controlling.

■■■ To the extent that the Michigan injunction affords protection authorized by Georgia law, the injunction would not violate Georgia public policy. Georgia recognizes the attorney-client and work-product privileges. O.C.G.A. § 9–11–26(b)(3) (Supp.1992); O.C.G.A. § 15–19–4(3); *id.* §§ 24–9–21(2), –24 & –25. A corporation may avail itself of the attorney-client privilege under Georgia law and, under certain circumstances set forth in a modified "subject-matter" test, may apply the privilege to communications

from a corporate employee. *Marriott Corp. v. American Academy of Psychotherapists, Inc.,* 157 Ga.App. 497, 277 S.E.2d 785, 791–92 (1981). Georgia law also authorizes injunctive relief to protect trade secrets against actual or threatened "misappropriation." O.C.G.A. § 10–1–762 (Supp.1992). As GM noted, however, "[i]n unmistakably clear terms, the Order flatly prohibits Elwell from offering *any* testimony in cases such as this without General Motors' prior written consent." (Opposition to Plaintiffs' Motion to Permit Deposition at 2).[1] Thus, the Michigan injunction on its face—and as GM seeks to apply it here—extends far beyond matters that might legitimately qualify for protection under an attorney-client or work-product privilege, or which disclosure would qualify as misappropriation of trade secrets. Given Georgia's narrow construction of the statutory privileges themselves in light of the purposes of discovery, *see Atlantic Coast Line R.R. v. Daugherty,* 111 Ga.App. 144, 141 S.E.2d 112, 117 (1965), this Court concludes that the Michigan order, by facially prohibiting Elwell from testifying as to matters outside the scope of any privilege, violates Georgia public policy. Therefore, the Full Faith and Credit Clause does not require this Court to give full effect to the Michigan court order.

■■■ Additionally, "a judgment has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered." *New York ex rel. Halvey v. Halvey,* 330 U.S. 610, 614, 67 S.Ct. 903, 906, 91 L.Ed. 1133 (1947). Where the Full Faith and Credit Clause is concerned, what the rendering state could do in modifying a decree, the forum state may do. *Id.* Michigan courts recognize the principle that equitable decrees, including permanent injunctions, may be modified by the issuing court when circumstances warrant. *First Protestant Reformed Church v. De Wolf,* 358 Mich. 489, 100 N.W.2d 254, 257 (1960); *Opal Lake Ass'n v. Michaywe Ltd. Partner.,* 47 Mich.App. 354, 209 N.W.2d 478, 485 (1973). Therefore, a Georgia court may modify the Michigan's court's decree without

---

1. That portion of the Michigan court order which purports to bar Elwell from serving as a *consultant* to plaintiffs' attorneys in cases involving GM products is not at issue here.

violating the Full Faith and Credit Clause. This Court concludes that the public interest—which must be weighed in any consideration of injunctive relief—is not served in this instance by prohibiting Elwell from testifying in Georgia as to matters not within the scope of an attorney-client or work-product privilege, or which divulgence would not constitute misappropriation of a trade secret, in accordance with Georgia law. Any interest GM might have in silencing Elwell as to unprivileged or non-trade-secret matters is outweighed by the public interest in full and fair discovery.[2]

Finally, this Court does not presuppose that the questions Plaintiffs desire to pose to Mr. Elwell will go into privileged areas. Plaintiffs contend that they desire to question Elwell concerning seat belts and door latches, as opposed to fuel systems (which apparently were the focus of Elwell's work with GM's legal department). If Elwell's answer to a specific question actually posed in deposition would violate a privilege or constitute misappropriation of a trade secret, then GM may raise a specific objection during the deposition. GM is cautioned that any objections must be made in good faith, and the burden lies with GM to establish that the specific matters are indeed subject to privilege or protection.

## CONCLUSION

Accordingly, the Magistrate Judge's order is hereby REVERSED. Plaintiffs' Motion to Permit the Deposition of Ronald Elwell is GRANTED. Plaintiffs may proceed to depose Mr. Elwell subject to the discovery schedule set by the Magistrate Judge.

2. As to the credibility (or lack thereof) of any testimony offered by Mr. Elwell, that evaluation lies within the province of a jury.