**Daniel Lawrence HANNAH and Shirley Hannah, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. CIV 93–1368 PHX RCB.**

United States District Court, D. Arizona.

Feb. 7, 1996.

Order Granting Modification May 30, 1996.

Kenneth L. Tucker, Daniel P. J. Miller, Phoenix, AZ, Joe R. McCray, San Francisco, CA, for Plaintiffs.

Arthur P. Greenfield, Richard W. Shapiro, Heidi L. McNeil, Snell & Wilmer, L.L.P., Phoenix, AZ, for Defendant.

## ORDER

BROOMFIELD, Chief Judge.

Currently before the court is defendant's motion to strike Ronald Elwell from plaintiff's witness list, motion for a protective order and motion to quash Elwell's subpoena duces tecum. The court heard oral argument on all three motions on January 22, 1996. At that time the court granted defendant's motion for a protective order and took the other two motions under advisement. Those matters being fully briefed, and after careful consideration of the relevant caselaw, the court now rules.

### I.  *Motion to Exclude Elwell Testimony*

Plaintiffs, Daniel and Shirley Hannah, have designated Ronald Elwell as a fact witness in this case. Defendant, General Motors Corp. ("GM"), objects on the basis of a permanent injunction issued in the Wayne County Michigan Circuit Court preventing Elwell from testifying against GM in any action without GM's consent. Defendant asserts that this court should give that injunction full faith and credit and consequently prevent Elwell's testimony.

Elwell was employed by GM from 1959 to 1989. During that time he was assigned to the Engineering Analysis Group ("the Group"). While there he worked with both in-house and outside counsel in preparing defenses against product liability lawsuits. He did so in a number of ways, including testifying as an expert witness, consulting with engineers on liability issues, preparing demonstrative exhibits, participating in litigation planning and strategy and helping to respond to discovery requests.

During his time with the Group, Elwell concentrated on fuel systems and fuel fed fires. His experience led him to suggest improvements in GM fuel line designs.

In 1987 Elwell's relations with the company soured. He left the Group and, pursuant to an agreement with GM, was placed on "unassigned" status with pay and without a regular work schedule. During this time he was free to work as a consultant in litigation that was not adverse to GM's interests. The agreement called for Elwell to continue in this capacity until 1989, at which time he would retire with 30 years of service.

In 1989, when the time came to finalize his retirement, Elwell refused to execute the paperwork because of dispute as to benefits. In 1991 Elwell instituted suit against GM in Wayne County Michigan Circuit Court, alleging wrongful discharge, breach of contract and tortious interference with business relationships. GM counterclaimed, alleging that Elwell had breached a fiduciary duty owed GM, and misappropriated and wrongfully disclosed privileged and confidential information.

During the pendency of *Elwell v. GM,* Elwell was deposed twice by the plaintiffs in *Moseley v. GM,* a case similar to the instant action, in Georgia state court. During those depositions, at the instance of GM, Elwell produced five bankers boxes of documents, many of which GM asserted to be privileged.

On November 22, 1991, after a three day hearing on the matter, the Michigan court issued a preliminary injunction against Elwell. That order prevented Elwell from

> consulting or discussing with or disclosing to any person any of GM's trade secrets, confidential information or matters of attorney-client work product relating in any manner to the subject of any products liability litigation whether already filed or filed in the future which Ronald Elwell received, had knowledge of, or was entrusted with during his employment with GM.

On August 26, 1992, the parties settled *Elwell v. GM.* Part of the settlement included a stipulation, signed by the parties, in which Elwell agreed to the entry of a permanent injunction. That injunction, subsequently issued by Judge Hathaway, incorporates the language of the preliminary injunction quoted above and goes on to prevent Elwell from

> (2) testifying, without prior written consent of GM Corp., either upon deposition or at trial as an expert witness, or a witness of any kind, and from consulting with attorneys or their agents in any litigation already filed or to be filed in the future, involving GM as an owner, seller, manufacturer and/or designer of the product(s) in issue. Provided, however, paragraph (2) of the Order shall not operate to interfere with the jurisdiction of the Court in the Georgia case referred to in the Stipulation.

Elwell subsequently testified on plaintiffs' behalf in *Moseley.* In that case the jury returned a verdict, including compensatory and punitive damages, of $105.5 million (the judgment was subsequently reversed on appeal).

The parties appear to agree that Elwell is an expert in GM fuel design, design history, fuel system safety, and fuel design decision making. However, plaintiffs' plan on calling Elwell as an ordinary "fact" witness. Defendant's object, citing the Permanent Injunction and the Full Faith and Credit clause of the United State Constitution as the reason this court should prevent Elwell's testimony in this case.

■ The full faith and credit clause requires a court in one forum to respect the judgments of courts in another forum, and to accord such judgments the same force and effect of law as if they were actually issued in the forum state. Plaintiffs argue that this court is empowered to disregard the Michigan Injunction, despite the full faith and credit clause, because its enforcement here violates fundamental Arizona public policy. GM strenuously disagrees, asserting that the Supreme Court has never recognized a public policy exception for the application of full faith and credit to the judgments of a foreign court. In support of this assertion, GM relies upon *Fauntleroy v. Lum,* 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 (1908). There, the Court was confronted with a gambling debt that had been deemed valid and en-

forceable by a Missouri court. The plaintiff then sought to enforce the Missouri judgment against the defendant in Mississippi. The Mississippi courts refused to enforce the judgment because of Mississippi's strong public policy against gambling. The Supreme Court reversed, holding that full faith and credit required the Mississippi courts to enforce the valid Missouri judgment regardless of whether the judgment itself would have been different if the action were originally brought in Mississippi.

■ GM argues that *Fauntleroy* is the end of the matter, and that based on its tenets, this court is bound to enforce the Michigan Injunction as if it were its own. However, the Supreme Court has had occasion to revisit the application of the Full Faith and Credit clause, and in so doing has recognized that a limited public policy exception does in fact exist. *See Nevada v. Hall,* 440 U.S. 410, 422, 99 S.Ct. 1182, 1189, 59 L.Ed.2d 416 (1979) ("[T]he Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy."); *State of New York ex rel. Halvey v. Halvey,* 330 U.S. 610, 614–615, 67 S.Ct. 903, 906, 91 L.Ed. 1133 (1947) ("[I]f the amount payable under a decree—as in the case of a judgment for alimony—is discretionary with the court which rendered it, full faith and credit does not protect the judgment. Whatever may be the authority of a State to undermine a judgment of a sister State on grounds not cognizable in the State where the judgment was rendered, it is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered." (citation omitted)); *Pacific Employers Ins. Co. v. Industrial Accident Comm'n,* 306 U.S. 493, 502, 59 S.Ct. 629, 633, 83 L.Ed. 940 (1939) ("It has often been recognized by this Court that there are some limitations upon the extent to which a state may be required by the full faith and credit clause to enforce even the judgment of another state in contravention of its own statutes or policy."); *Alaska Packers Ass'n v. Industrial Accident Comm'n,* 294 U.S. 532, 546, 55 S.Ct. 518, 523, 79 L.Ed. 1044 (1935) (same). GM argues that these cases simply stand for the proposition that the Full Faith and Credit clause does not require a state to apply another state's statute when to do so would violate its own legitimate public policy concerns. Read more broadly, however, these post *Fauntleroy* cases seem to create exceptions to the broad statement in *Fauntleroy* that all state judgments must be entitled to full faith and credit. The court finds this to be a fairer interpretation of the Supreme Court's cases dealing with this issue. Moreover, it must be noted that the decisions of other courts are in substantial agreement. *See Williams v. General Motors Corp.,* 147 F.R.D. 270, 272 (S.D.Ga.1993) (finding that a public policy exception exists to the application of the full faith and credit clause to the judgment of a sister state); *Stephens v. Superior Court,* 41 Cal.App.4th 1014, 49 Cal. Rptr.2d 20 (1996) (same). Thus, based upon a broad reading of Supreme Court pronouncements, the court holds that a narrow exception to the Full Faith and Credit clause exists when certain policy interests of the forum state are at play. Furthermore, that limited exception is implicated when, as here, there is an absolute bar to the testimony of a non-party fact witness caused by an injunction to which plaintiffs were not a party.

However, this is not the end of the court's inquiry, for Arizona must in fact have a public policy of such legitimacy and import that the exception just articulated applies in this case. In this regard, plaintiffs argue that the Arizona Constitution protects the right of action to recover damages for injuries caused by another. *See* Ariz. Const. art. 18, § 6. "Implicit in the concepts upon which the constitutional provision is based is that an injured person has the right to present evidence that his injuries were caused by someone else." (Pls.' Resp. to Mot. to Strike at 20.)

Apparently, it is plaintiffs' position that application of the Michigan Injunction, by limiting their right to Elwell's evidence, somehow impairs their constitutional right to sue GM for their injuries. However, no Arizona court has ever stretched the Arizona Constitution in this manner, and this court declines to do so. Moreover, the court's own research has failed to unearth any articulated

Arizona policy which might otherwise support plaintiffs' position. This lack of caselaw, however, does not mean that such a policy does not exist. Rather, the Arizona courts may have yet to confront an issue conducive to an applicable policy announcement. Therefore, the court believes that this case should be certified to the Arizona Supreme Court, so that they may advise whether the application of the Michigan Injunction in this instance would violate a fundamental public policy of Arizona.

However, before burdening the Arizona Supreme Court with such a request, the court believes that plaintiffs should be obliged to seek a modification of the Michigan Injunction. Thus, they are hereby granted 90 days in which to do so. If unsuccessful, plaintiffs and defendant will both have the chance to submit a proposed form of certified question.

## II. *Motion to Quash Subpoena Duces Tecum*

Plaintiff served Elwell with a subpoena duces tecum in which it sought production of his confidential Settlement Agreement with GM. Defendant objects asserting the courts' strong policy interests in preventing the discovery of confidential settlements. *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed.Cir.1993).

Plaintiff seeks the Agreement for three reasons. First, because the Injunction was a consensual agreement, plaintiff feels that the court should have the entire "record" surrounding the entry of the Injunction, not just the Injunction and the public Stipulation between GM and Elwell, in deciding whether or not Elwell can testify. Because the court reviewed the Settlement Agreement *in camera*, this reason for production is moot.

Second, plaintiff asserts it needs the Settlement Agreement because if Elwell testifies, and if GM seeks to paint him as a disgruntled employee, the Settlement Agreement might be evidence which serves to rehabilitate his credibility in the eyes of the jury. However, upon its review of the Settlement Agreement, the court finds nothing

within it that could legitimately serve as rehabilitative evidence.

Third, plaintiff argues that GM's assertions concerning public policy are inapposite because "[n]ot a single case cited by GM holds that the mere fact that a confidential settlement agreement entered into under circumstances similar to the instant case precludes it from production [sic]." (Pls.' Resp. to Motion to Quash at 5.) Instead, plaintiffs assert that if the Settlement Agreement is one in which GM bought Elwell's silence, then public policy mandates its disclosure.

Defendant, in its reply, notes that plaintiffs fail to cite any law in support of its arguments. Moreover, defendant notes that plaintiffs have "failed to identify a single court that has ever ordered production of the Settlement Agreement. Indeed, no court has ever ordered production of the Settlement Agreement, and plaintiffs have offered no reason why this Court should be the first." (Def.'s Reply at 6.)

Indeed, plaintiffs have articulated no legitimate reason why the Settlement Agreement should be disclosed. Defendant's motion to quash is granted.

IT IS ORDERED deferring ruling on defendant's motion to strike Elwell from plaintiff's witness list and preclude his testimony (doc. 133). Plaintiffs have 90 days in which to petition the Michigan court for a modification of the Permanent Injunction. A failure by plaintiff to seek such relief may be deemed by this court to be a concession to defendant's position on the underlying motion.

IT IS FURTHER ORDERED granting defendant's motion to quash subpoena duces tecum and for a protective order (doc. 147).

## ORDER

On February 7, 1996, this court ordered plaintiffs to seek a modification of the Michigan injunction preventing Elwell from testifying against defendant. Failing that, the order proposed to certify to the Arizona Supreme Court the question of whether preventing Elwell from testifying in this case would violate Arizona public policy. On March 4, 1996, plaintiffs filed a motion to

vacate or modify "the Elwell order" pursuant to Fed.R.Civ.P. 60(b). This matter being fully briefed, the court now rules.

## DISCUSSION

■ The first issue to reconsider is whether plaintiffs must seek a modification of the Michigan injunction from Judge Hathaway. Plaintiffs correctly note the court's position that plaintiffs need not go to Michigan if to do so would be futile. In an effort to prove futility plaintiffs point to the application made to Judge Hathaway in *McLain v. GM.* In that case, by Order dated December 11, 1995, Judge Hathaway explicitly refused to modify the Elwell injunction. Based upon that Order's temporal proximity to the proceedings currently before this court, the court is now convinced that forcing plaintiffs to seek modification from Judge Hathaway would be futile. Plaintiffs are hereby relieved from that obligation.

■ The second issue to reconsider is the court's decision to certify to the Arizona Supreme Court whether Arizona public policy prevents enforcement of the Michigan injunction. Plaintiff asserts two arguments in support of reconsideration. First, it argues that the public policy of Arizona is so clear on this issue that certification is unnecessary. In the alternative, plaintiffs assert that federal law should govern the court's analysis of this question. Defendants respond by rearguing their belief that there is no public policy exception to the full faith and credit clause.

Initially, the court notes that the full faith and credit clause of the United States Constitution does not bind federal courts to respect state court judgments. *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) ("The Full Faith and Credit Clause is of course not binding on federal courts."). Rather, the extent to which a state court judgment is binding in a subsequent federal court action is governed by the full faith and credit act, codified at 28 U.S.C. § 1738. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 483 n. 24, 102 S.Ct. 1883, 1898 n. 24, 72 L.Ed.2d 262 (1982) ("Section 1738 was enacted to implement the Full Faith and Credit Clause, ... and specifically to insure that federal courts, not included within the constitutional provision, would be bound by state judgments.").

Neither party has acknowledged this line of cases. Rather, both treat this as a full faith and credit clause question. These cases, however, arose from federal question jurisdiction, not diversity. This court believes that, as a court sitting in diversity, it is the full faith and credit clause that would require it to enforce the Michigan injunction, not § 1738. As a result the court must look to the policies of the forum state, in this case the state of Arizona. *Cf. Williams v. General Motors Corp.,* 147 F.R.D. 270 (S.D.Ga. 1993) (sitting in diversity court looked to the policies of the State of Georgia in determining whether the Full Faith and Credit Clause applied).

■ Defendant's brief reargues its belief that there is no public policy exception to the question of full faith and credit. However, for the reasons stated in the court's February 7th Order, the court disagrees. Moreover, upon further reflection the court concludes that Arizona public policy *would be violated* by enforcing the blanket prohibition of the Michigan injunction.

Arizona recognizes a party's right to both the attorney-client and work product privileges. However, Arizona also has a strong, clearly defined policy of encouraging full, fair, open disclosure of all relevant, material evidence within a case. *See* Ariz. R. Civ. P. 26.1 ("the Zlaket Rules"); *Cornet Stores v. Superior Court in and for Yavapai County,* 108 Ariz. 84, 492 P.2d 1191, 1194 (1972) ("It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case." (quoting *State ex rel. Willey v. Whitman,* 91 Ariz. 120, 370 P.2d 273, 276 (1962))). By preventing Elwell from providing *any* testimony whatsoever, whether privileged or not, the Michigan injunction prevents the Hannahs from receiving and utilizing otherwise competent, relevant, material evidence. This clearly violates the fundamental Arizona public policy outlined above.

Furthermore, the question of what evidence can be heard in a court of law touches upon fundamental issues concerning the judi-

ciary's very existence. This court, indeed every court throughout the nation, exists to serve the ends of justice. When a case cannot be resolved through motion practice this job invariably turns from an analysis of legal principles to a search for the truth. At that point the court must serve as a gatekeeper of evidence; allowing in all that conforms to the web of procedural and evidentiary rules that govern modern litigation. These rules have evolved over time to ensure that the facts presented to the jury are untainted by prejudice or bias; thus, the basis for such doctrines as the attorney client and work product privileges, or Fed.R.Evid. 403. The Michigan injunction usurps these rules by keeping out *all* of Elwell's testimony. This in turn prevents the jury from making a determination based upon all the relevant, admissible evidence. The effect is an obscured search for truth. As the California Court of Appeals aptly observed when confronted with this exact issue, "recognition of the injunction would undermine the fundamental integrity of [California's] judicial system." *Stephens v. Superior Court*, 41 Cal. App.4th 1014, 49 Cal.Rptr.2d 20, 27 (1996). This is no less true for courts within either the Arizona or federal judiciaries. *Cf. Williams*, 147 F.R.D. at 272 (finding the same Injunction violated the same public policy in the State of Georgia).

Assuming, however, that § 1738 is the proper method of analysis, the court's conclusion remains the same. As the Ninth Circuit has recognized, "the implementation of federal statutes representing countervailing and compelling federal *policies* justifies departures from a strict application of [§ 1738]." *Red Fox v. Red Fox*, 564 F.2d 361, 365 n. 3 (9th Cir.1977) (collecting cases) (emphasis added); *see also Hooks v. Hooks*, 771 F.2d

935, 950 (6th Cir.1985) (Recognizing the proposition that under § 1738 "full faith and credit will not be accorded state court judgments regular on their face, where to do so would defeat a vital or overriding federal interest."); *American Mannex Corp. v. Rozands*, 462 F.2d 688, 690 (5th Cir.1972) ("Other well-defined federal policies, statutory or constitutional, may compete with those policies underlying section 1738."); *Williams v. Sclafani*, 444 F.Supp. 906, 917 (S.D.N.Y. 1978) (same). Nor does *Matsushita Elec. Indus. Co. v. Epstein*, —— U.S. ——, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) alter this conclusion.

In *Matsushita* the Supreme Court held that, absent a partial repeal of § 1738, a state court judgment approving a class-action settlement has preclusive effect on related claims that are otherwise within the exclusive jurisdiction of the federal courts. The Court recognized that the statute under which the subsequent suit is brought could, either explicitly or implicitly, create an exemption from § 1738. However, the Court held that the Exchange Act, the statute at issue in *Matsushita*, had created no such exception. As a result the full faith and credit act applied and the second suit was claim barred.

Although *Matsushita* recognized an exception to § 1738 only in the face of a federal statute or constitutional provision, as bottom it dealt with claim preclusion. Indeed, cases analyzing § 1738 center upon the question of preclusion. *See, e.g., Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 83–85, 104 S.Ct. 892, 897–898, 79 L.Ed.2d 56 (1984) (claim preclusion under § 1738); *Allen v. McCurry*, 449 U.S. 90, 96–105, 101 S.Ct. 411, 415–421, 66 L.Ed.2d 308 (1980) (issue preclusion). This case deals with neither claim nor issue preclusion.[1] Rather, as explained pre-

---

1. Issue preclusion "prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Shaw v. Hahn*, 56 F.3d 1128, 1131 (9th Cir.1995). Putting aside the question whether the terms of the stipulated injunction were "actually litigated and necessarily decided," the injunction nevertheless cannot serve to collaterally estop the Hannahs from calling Elwell as a witness, for "[t]he doctrine of issue preclusion, of course, cannot be applied against a litigant who was not a party to or in privity with a party to the prior proceeding." *Id.* The

Hannahs were neither a party nor in privity with a party in the case of *Elwell v. GM*. Indeed, their cause of action had not even accrued at the time of the Michigan proceedings. Nor would defendant be correct in asserting that it seeks to merely apply the injunction against Elwell. This entire question came before the court on defendant's motion to strike Elwell from the *Hannahs'* witness list. In other words, GM asked this court to prevent the Hannahs from calling Elwell. This was not a motion directed at Elwell. At all times its intended target was the Hannahs.

viously, it deals with questions regarding the very purpose of the judiciary. These questions are fundamental and override the court's obligation to apply full faith and credit in this instance.[2]

IT IS ORDERED granting plaintiffs' motion to vacate and/or modify the Order regarding Elwell testimony pursuant to Rule 60(b) (doc. 219).

IT IS FURTHER ORDERED denying defendant's motion to strike Elwell from plaintiffs' witness list (doc. 133).

IT IS FURTHER ORDERED denying, as moot, defendant's motion for supplemental briefing on defendant's motion to strike Elwell from plaintiffs' witness list (doc. 180).

IT IS FURTHER ORDERED denying, as moot, plaintiff's motion to strike defendants "notice" re plaintiff's motion to vacate (doc. 225).

**2.** It goes without saying that "[i]f Elwell's answer to a specific question actually posed [at trial] would violate a privilege or constitute misappro-

priation of a trade secret, then GM may raise a specific objection...." *Williams,* 147 F.R.D. at 273.