Gina SHAW, Plaintiff–Appellant,

v.

James K. HAHN; John Emerson; James Pearson; Thomas Hokinson, et al., Defendants–Appellees.

No. 94–55472.

United States Court of Appeals, Ninth Circuit.

Argued * and Submitted May 1, 1995.

Decided June 6, 1995.

* Counsel for the parties appeared. Appellant's counsel waived opening argument. Appellees' counsel then waived argument and the court submitted the case without argument.

Stephen Yagman, Yagman & Yagman, Venice, CA, for plaintiff-appellant.

Annette Keller, Asst. City Atty., Los Angeles, CA, for defendants-appellees.

Before: FLETCHER, BRUNETTI, and T.G. NELSON, Circuit Judges.

FLETCHER, Circuit Judge:

Gina Shaw appeals the district court's dismissal of her civil rights action against the City of Los Angeles and former and current members of the Los Angeles City Attorney's Office. Shaw, who is African–American, claims that the defendants violated her equal protection rights by exercising a peremptory challenge to remove her from a venire panel on the basis of her race. We have jurisdiction and affirm.

I

In September of 1993, Shaw was called for jury duty and was among the jurors subjected to voir dire in the case of *Tapia v. Gates.* *Tapia* involved claims against the City of Los Angeles and various city officials by Raymond Tapia and Jason Corona, who alleged that an off-duty police officer had violated their constitutional rights by shooting them during a physical altercation. The defendants in the *Tapia* action were represented by the City Attorney's Office. During jury selection, Deputy City Attorney Cory Brente exercised a peremptory challenge against Shaw. Tapia and Corona objected to the challenge, alleging that it was based on race and therefore violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After a sidebar, District Court Judge Stephen Wilson permitted the peremptory challenge and excused Shaw from the jury.

Judge Wilson subsequently explained his basis for rejecting Tapia's and Corona's *Batson* objection:

(1) The Court noted that the challenged juror had responded suspiciously slowly and in a somewhat hostile manner when individually questioned by the Court during jury selection;

(2) At sidebar, defendant[s'] counsel informed the Court that, during questioning of the whole venire panel, defendant[s'] counsel had noticed body language of the challenged juror indicating hostility to defendant[s'] position. The Court had not observed the same body language, but defense counsel's observations were consistent with the Court's separate observations, and the Court had no reason to doubt the veracity of defendant[s'] counsel.

Order Regarding *Batson* Claim and Request for Adverse Inference, *Tapia v. Gates,* No. CV-91–6735–SVW (C.D.Cal. Nov. 1, 1993).[1] Noting that Brente had not challenged another African–American juror, Judge Wilson rejected the plaintiffs' *Batson* challenge.

---

1. We take judicial notice of Judge Wilson's order. In deciding whether to dismiss a claim under Fed.R.Civ.P. 12(b)(6), a court may look beyond the plaintiff's complaint to matters of public record. *Mack v. South Bay Beer Distribs., Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986) (district court's consideration of state administrative records to determine whether an agency decision had a collateral estoppel effect on the plaintiff's claim did not convert defendant's 12(b)(6) motion to one for summary judgment).

Two months after she was excused from the venire panel in *Tapia*, Shaw sued Brente, the City of Los Angeles, and various former and current employees of the Los Angeles City Attorney's Office under 42 U.S.C. §§ 1983, 1985, and 1986, alleging that the defendants violated her equal protection rights by excluding her from the jury on the basis of her race. The defendants moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss for failure to state a claim upon which relief could be granted. The district court granted the defendants' motions to dismiss, and Shaw filed a timely notice of appeal.

## II

■ We accept the premise that Shaw has an equal protection right not to be excluded from a jury solely on the basis of her race. When the Supreme Court held in *Batson*, 476 U.S. at 84–100, 106 S.Ct. at 1716–25, that the use of a peremptory challenge in a criminal trial to exclude a venireperson from the jury solely on the basis of his or her race violated the Equal Protection Clause, the Court explained that the practice violated not only the equal protection rights of the criminal defendant by denying him the protection that a jury trial is intended to secure, *id.* at 85–86, 106 S.Ct. at 1716–17, but also the equal protection rights of the excluded juror, *id.* at 87–88, 106 S.Ct. at 1718.

■ In *Batson*'s progeny, the Supreme Court has made clear that the prohibition against racially discriminatory peremptory challenges is bottomed primarily in the equal protection rights of the potential juror, not the rights of the litigant. *See generally* Barbara D. Underwood, *Ending Race Discrimination in Jury Selection: Whose Right is it,*

*Anyway?*, 92 Col.L.Rev. 725, 742–50 (1992) (arguing that the primary doctrinal foundation for *Batson* and its progeny is that raced-based jury selection violates the equal protection rights of excluded venirepersons). For example, in *Powers v. Ohio*, 499 U.S. 400, 404–16, 111 S.Ct. 1364, 1366–74, 113 L.Ed.2d 411 (1991), the Court held that a criminal defendant could object to an allegedly discriminatory use of a peremptory challenge, even if the defendant did not share the challenged juror's race. In response to the state's argument that a white defendant could not object to the exclusion of black venirepersons, the Court explained that its decision in *Batson* "was designed to serve multiple ends, only one of which was to protect individual defendants from discrimination in the selection of jurors." *Id.* at 406, 111 S.Ct. at 1368 (quotations omitted). Emphasizing the importance of an individual's right not to be excluded from a jury on account of race, *id.* at 406–09, 111 S.Ct. at 1368–70, the Court stated explicitly that an excluded venireperson has a legal right to bring suit on his or her own behalf, but recognized that the "daunting" barriers to such a suit hindered the venireperson's ability to assert his or her own constitutional rights.[2] *Id.* at 414, 111 S.Ct. at 1372. Applying the three-prong test to determine third party standing, *see Singleton v. Wulff*, 428 U.S. 106, 112–16, 96 S.Ct. 2868, 2873–75, 49 L.Ed.2d 826 (1976),[3] the Court concluded that a criminal defendant, regardless of his or her race, has standing to raise the excluded venireperson's equal protection rights and object to a race-based peremptory challenge. *Powers*, 499 U.S. at 410–416, 111 S.Ct. at 1370–74.

Two months later, in *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct.

---

**2.** The Court had long recognized that individual jurors were unlikely to pursue on their own behalf the available remedies against race-based jury selection. *See Vasquez v. Hillery*, 474 U.S. 254, 262 n. 5, 106 S.Ct. 617, 623 n. 5, 88 L.Ed.2d 598 (1986) (noting that, "in theory," section 1983 "allows redress for blacks who have been excluded from grand jury service," but that such suits were rare and therefore an ineffective remedy for discrimination); *Rose v. Mitchell*, 443 U.S. 545, 558, 99 S.Ct. 2993, 3001, 61 L.Ed.2d 739 (1979) (recognizing that "expensive to maintain and lengthy" civil actions "have not often been used"

to vindicate the rights of minorities to serve on grand juries).

**3.** A litigant may assert the legal rights or interests of third parties only when (1) the litigant has suffered an injury in fact, giving him a concrete interest in the outcome of the disputed issue; (2) the litigant has a close relationship to the third party; and (3) the third party's ability to protect his own interests in hindered. *Singleton*, 428 U.S. at 112–16, 96 S.Ct. at 2873–75.

2077, 114 L.Ed.2d 660 (1991), the Court held that the prohibition against racially discriminatory peremptory challenges applied to jury selection in civil cases as well as criminal cases. *Id.* at 618–31, 111 S.Ct. at 2081–89. In doing so, the Court echoed the logic of *Powers,* holding that private litigants in civil trials have third-party standing to raise the equal protection claims of venireperson excluded on account of race. *Id.* at 628–31, 111 S.Ct. at 2087–89 ("Our conclusion in *Powers* that persons excluded from jury service will be unable to protect their own rights applies with equal force in a civil trial.").

### III

■ Thus, it is axiomatic that Shaw has a right not to be excluded from a jury solely on the basis of her race and that she can bring a claim alleging that a civil litigant has violated that right. *See, e.g., Carter v. Jury Comm'n of Greene County,* 396 U.S. 320, 329–30, 90 S.Ct. 518, 523, 24 L.Ed.2d 549 (1970) (individuals excluded from jury service on the basis of their race may bring suit on their own behalf). Indeed, the defendants do not seriously dispute that the right violated by raced-based jury selection is the excluded venireperson's. Rather, the defendants argue that Judge Wilson's determination during the *Tapia* trial that the defendants based their peremptory challenge on neutral, nondiscriminatory reasons should be given preclusive effect in this action. We agree.

■ The doctrine of issue preclusion prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding. *Robi v. Five Platters, Inc.,* 838 F.2d 318, 322 (9th Cir.1988). Judge Wilson necessarily decided as part of the *Tapia* action whether the defendants' peremptory challenge against Shaw was racially discriminatory. He held it was not. We turn then to whether the issue was fully and fairly litigated by the parties in the *Tapia* action.[4] Tapia

and Corona promptly objected to the peremptory challenge against Shaw on the grounds that the challenge was racially discriminatory. As *Batson* prescribes, Judge Wilson required the defendants to articulate a neutral basis for the challenge. After considering the defendants' proffered reasons, Judge Wilson concluded that they were neutral, nonpretextual, and comported with his own observations.

■ Nonetheless, Shaw asserts she should not be bound by Judge Wilson's ruling. The doctrine of issue preclusion, of course, cannot be applied against a litigant who was not a party to or in privity with a party to the prior proceeding. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Lab., Inc. v. University of Illinois Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). "[W]hen two parties are so closely aligned in interest that one is the virtual representative of the other, a claim by or against one will serve to bar the same claim by or against the other." *Nordhorn v. Ladish Co.,* 9 F.3d 1402, 1405 (9th Cir.1993); *accord United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir. 1980); *see also In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir.1983) ("Privity exists when there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest.").

■ We conclude that the identity of interests between Shaw and the *Tapia* plaintiffs, and the adequacy of the *Tapia* plaintiffs' representation of her equal protection interests, were such that they were in privity. *See Powers,* 499 U.S. at 410–16, 111 S.Ct. at 1364–74. In *Powers,* the Supreme Court, holding that a white criminal defendant shares a sufficiently close relationship with a black venireperson to enjoy standing to assert the venireperson's equal protection rights, concluded that

---

**4.** The plaintiffs' excessive force claims in *Tapia* eventually were rejected on the merits, and, although Tapia and Corona appealed Judge Wilson's entry of judgment against them, *see Tapia v. Gates,* No. 93–56658, 1995 WL 323755 (9th Cir.1995), they did not appeal his *Batson* deter-

mination. The *Tapia* plaintiffs' failure to appeal does not prevent us from holding that the issue was fully and fairly litigated for purposes of applying issue preclusion. *Ayers v. Richmond,* 895 F.2d 1267, 1271 (9th Cir.1990).

*the excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom.* A venireperson excluded from jury service because of race suffers a profound personal humiliation heightened by its public character. The rejected juror may lose confidence in the court and its verdicts, as may the defendant if his or her objections cannot be heard. *This congruence of interests makes it necessary and appropriate for the defendant to raise the rights of the juror. And, there can be no doubt that petitioner will be a motivated, effective advocate for the excluded venirepersons' rights.*

*Id.* at 413–14, 111 S.Ct. at 1372 (emphasis added). In *Edmonson,* the Court noted that "the relation between the excluded venireperson and the litigant challenging the exclusion [is] just as close in the civil context as in the criminal trial." 500 U.S. at 629, 111 S.Ct. at 2087. A litigant raising a *Batson* objection acts shares a sufficient commonality of interest with the venireperson to act as her "virtual representative" for purposes of litigating her equal protection claim.[5]

Shaw does not argue that the *Tapia* plaintiffs had a conflict of interest with her or were in any other way hindered from protecting her equal protection interests during the jury selection process.[6] Absent such a showing, Judge Wilson's determination binds her just as it did the *Tapia* plaintiffs. *See Nevada v. United States,* 463 U.S. 110, 134–44, 103 S.Ct. 2906, 2920–25, 77 L.Ed.2d 509 (1983) (parties whose interests were represented by the United States in previous litigation were bound by the decree in that litigation).

---

**5.** We are not called upon in this case to decide whether a venireperson can bring a civil rights action on his or her own behalf if the litigant in the prior proceeding failed to raise a *Batson* objection to a peremptory challenge against the venireperson. The doctrine of issue preclusion bars litigation only of issues actually litigated and necessarily decided in a prior proceeding. However, under the doctrine of claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moi-*

Accordingly, the district court's dismissal of Shaw's action is AFFIRMED.

*tie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). Our holding that a litigant acts as a venireperson's "virtual representative" when litigating a *Batson* claim is not determinative of the questions whether the litigant is the venireperson's privy when *failing* to pursue a *Batson* claim or whether the litigant can effectively waive the venireperson's individual claim.

**6.** Indeed, Shaw is represented in this action by the same attorney who represented the plaintiffs in the *Tapia* litigation.