**BIAGRO WESTERN SALES, INC., a California corporation, Plaintiff,**

v.

**HELENA CHEMICAL COMPANY, a Delaware corporation, Defendant.**

**No. 01CV5014 OWW DLB.**

United States District Court, E.D. California.

May 7, 2001.

Mark Daryl Miller, Kimble MacMichael and Upton, Fresno, CA, for plaintiff.

James T. Hannick, Gray Cary Ware and Freidenrich, San Diego, CA, Ashley I. Pezzner, Rudolf E. Hutz, Connolly Bove Lodge and Hutz, Wilmington, DE, for defendant.

MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS FOR LACK OF STANDING AND FAILURE TO JOIN AN INDISPENSABLE PARTY

WANGER, District Judge.

## I. INTRODUCTION

Before the Court are motions pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), and 19, brought by Defendant, HELENA CHEMICAL COMPANY, to dismiss Plaintiff's complaint for lack of standing and failure to join an indispensable party. Plaintiff, BIAGRO WESTERN SALES, INC., opposes Defendant's motion. *See* Doc. 41. Oral argument was held April 30, 2001.

## II. BACKGROUND

On January 3, 2001, Plaintiff filed a complaint against Defendant for patent infringement of U.S.Patent No. 6,113,665 ("the '665 Patent"). The patent was issued September 5, 2000 to the Regents of the University of California ("the Regents") as the assignee of the inventor, Carol J. Lovatt. Plaintiff is the asserted "Exclusive Licensee" of the '665 patent under an agreement with the Regents signed August 31, 1993.

Defendant asserts that Plaintiff lacks standing to bring an infringement action in its own name and has failed to join the Regents, the original patent holder, an asserted indispensable party to Plaintiff's infringement action. Both parties' claims revolve around the language of the "Exclusive License Agreement" between Plaintiff and the Regents. *See* Helena Mot., Ex. A

("Exclusive License Agreement" or "the agreement").

*The Agreement*

Under the agreement, Plaintiff is granted an exclusive license to make, use, and sell the patent products and to practice the patent method where the Regents' patent rights exist. *See* Agreement ¶ 2.1. The Regents have expressly reserved the right to publish all technical data resulting from any research performed by the Regents relating to the Invention, its use, patent products, patent methods and associated technology, solely for educational and research purposes. *See id.* at ¶ 2.5.

Plaintiff may not assign its rights under the patent without the written consent of the Regents. *See id.* at ¶ 19.1. The Regents consent "shall not be unreasonably withheld." *Id.* As stated in the agreement:

This Agreement is binding upon and shall inure to the benefit of The Regents, its successors and assigns, but shall be personal to the Licensee and assignable by the Licensee only with the written consent of The Regents, which consent shall not be unreasonably withheld.

*Id.* Plaintiff may bring a patent infringement suit only if the Regents elect not to commence suit and the purported infringement occurred during the period and in a jurisdiction where the Plaintiff has exclusive rights. *See id.* at ¶ 16.2. Plaintiff must first notify the Regents of the possible infringement. *See id.* at ¶ 16.1. Plaintiff must then provide the Regents with "reasonable evidence" of such infringement. *See id.* Neither the Plaintiff, nor the Regents, may contact or notify the third party of the infringement without first obtaining the consent (not unreasonably withheld) of the other. *See id.* Plaintiff may request that the Regents take legal action "against the infringement of Regents' Patent Rights." *Id.* Plaintiff's

request must be made in writing and provide reasonable evidence of infringement and damages to Plaintiff. *See id.* The Regents will then have the right to commence suit on its own or refuse to participate in such a suit. *See id.* Upon the Regents decision whether or not to commence suit, Plaintiff may then bring suit for patent infringement. *See id.*

Royalties derived from the patent technology are to be collected by the Plaintiff and transferred to the Regents. *See id.* at ¶ 4. If legal restrictions prevent prompt payment to the Regents, Plaintiff is to pay the Regents directly for the amount impounded. *See id.* at ¶ 4.7. In the event that the patent is held invalid, Plaintiff is not relieved from paying royalties that accrued before that court decision. *See id.* at ¶ 4.8.

The Regents retain the option and right of terminating the agreement or modifying Plaintiff's exclusive license to a non-exclusive license. If Plaintiff fails to meet the "Due Diligence" provisions of the agreement, the Regents have provided written notice of the deficiency, and are unsatisfied with Plaintiff's attempts to correct the deficiency, the Regents may terminate the agreement or modify Plaintiff's exclusive license to a non-exclusive license. *See id.* at ¶ 5.5. The exercise of this right and option by the Regents supersedes the rights explicitly granted to the Plaintiff. *See id.* at ¶ 5.4.

Plaintiff is required to provide the Regents with progress and royalty reports to allow the Regents to verify that Plaintiff has met its due diligence obligations. *See id.* at ¶ 6.2. Either party may terminate the agreement upon compliance with the notice provisions; the Regents would the retain all patent rights previously conferred to Plaintiff. *See id.* at ¶¶ 19–10. In addition, Plaintiff cannot file foreign counterpart patents. *See id.* at ¶ 14.3. Plaintiff is to absorb the costs of maintaining the patents covered by the agreement. *See id.* at ¶ 14.4.

## III. *LEGAL STANDARD*

### A. *Failure to State a Claim: Rule 12(b)(6)*

 A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is disfavored and rarely granted: A dismissal for failure to state a claim is appropriate only where it appears, beyond a doubt, that the plaintiff can prove no set of facts that would entitle it to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All allegations of material fact in the complaint are taken as true and construed in the light most favorable to [the] plaintiff. *See Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir.1998).

 A district court is not entirely limited to considering facts in the complaint. Facts subject to judicial notice may be considered on a motion to dismiss. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir.1987). For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies. *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir.1995). Conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact in a complaint need not be accepted. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981). Documents attached to the complaint are part of the complaint and may be considered on a motion to dismiss. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987); *see also Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994) ( [A] document is not 'outside'

the complaint if the complaint specifically refers to the document and if its authenticity is not questioned.).

### B. Subject Matter Jurisdiction: Rule 12(b)(1)

▮ A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction, derived from the case or controversy clause of Article III of the U.S. Constitution. Federal courts are limited in jurisdiction; it is presumed that a case lies outside the jurisdiction of the federal courts unless Plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 376, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221 (9th Cir.1989); *Thornhill Publishing Co. v. General Telephone & Electronics Corp.,* 594 F.2d 730, 733 (9th Cir.1979). "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Id.* at 733.

▮ A 12(b)(1) motion may "attack the existence of subject matter jurisdiction in fact, quite apart from any pleading," as a "speaking motion." *Mortensen,* 549 F.2d at 891; *Thornhill Publishing,* 594 F.2d at 733, *FDIC v. Nichols,* 885 F.2d 633, 635–36 (9th Cir.1989). Defendant may "rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.) (citations omitted), *cert. denied,* 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989). "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.*

*[I]n a factual 12(b)(1) motion … no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.*

▮ *Mortensen,* 549 F.2d at 891 (emphasis added). Although deference is given to a plaintiff's factual allegations in a 12(b)(6) motion, plaintiff's allegations need not be taken as true when considering a Rule 12(b)(1) motion. *See Thornhill Publishing,* 594 F.2d at 733 ("[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."); *see also Trentacosta v. Frontier Pacific Aircraft Industries,* 813 F.2d 1553, 1557–58 (9th Cir. 1987).

### C. Failure to Join an Indispensable Party: Rule 12(b)(7)

▮ A party may move to dismiss a case for "failure to join a party under Rule 19." Fed.R.Civ.P. 12(b)(7). The Ninth Circuit has held that a court should grant a 12(b)(7) motion to dismiss only if the court determines that joinder would destroy jurisdiction and the nonjoined party is necessary and indispensable. *See Shermoen v. United States,* 982 F.2d 1312, 1317–18 (9th Cir.1992). A motion to dismiss for failure to join an indispensable party requires the moving party to bear the burden in producing evidence in support of the motion. *See Citizen Band Potawatomi Indian Tribe of Okla. v. Collier,* 17 F.3d 1292, 1293 (10th Cir.1994). A Rule 12(b)(7) motion for failure to join an indispensable party demands a fact specific and practical inquiry. *See Makah Indi-*

*an Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir.1990) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118–19, 88 S.Ct. 733, 742–43, 19 L.Ed.2d 936 (1968)).

Pursuant to Fed.R.Civ.P. 19, the court performs a two-step analysis, to determine whether an action, in "equity and good conscience," can proceed without the absent party. *See* Fed.R.Civ.P. 19. Rule 19 mandates the joinder of a party whose joinder will not deprive the court of jurisdiction if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

 Fed.R.Civ.P. 19(a). There is no precise formula for determining whether a particular non-party is necessary to an action; the determination will be heavily influenced by the facts and circumstances of each case. *See Confederated Tribes v. Lujan,* 928 F.2d 1496, 1498 (9th Cir.1991). If an absent party is found "necessary" in the first step, Rule 19(a), and cannot be joined in the action, then the court must apply the "indispensable party" test outlined in Rule 19(b). *See Confederated Tribes of Chehalis Indian Reservation v. Lujan,* 928 F.2d 1496, 1498 (9th Cir.1991) (citing *Makah Indian Tribe,* 910 F.2d at 558); *Kescoli v. Babbitt,* 101 F.3d 1304, 1309 (9th Cir.1996).

### D. *Indispensable Party: Rule 19*

 Whether a non-party is "indispensable" is determined by application of Federal Rule of Civil Procedure 19. Under that rule, the district court must first determine if an absent party is "necessary" to the action; then, if that party cannot be joined, the court must determine whether the party is "indispensable" so that in "equity and good conscience" the action should be dismissed. *See Makah Indian Tribe,* 910 F.2d at 558. The district court's decision to dismiss an action based on the absence of an indispensable party is reviewed for an abuse of discretion. *Id.* at 557.

 There is no precise formula for determining whether a particular non-party is necessary to an action. *See Bakia v. County of Los Angeles,* 687 F.2d 299, 301 (9th Cir.1982). "The determination is heavily influenced by the facts and circumstances of each case." *Id.* Nevertheless, Rule 19(a) contemplates a two-part analysis to aid in determining if an absent party is necessary. First, the court must consider if complete relief is possible among those parties already in the action. Second, the court must consider whether the absent party has a legally protected interest in the outcome of the action. *See Makah Indian Tribe,* 910 F.2d at 558. Generally, a necessary non-party will be joined as a party. *See* Fed.R.Civ.P. 19(a).

Rule 19(b) provides a four-part test to determine whether a non-party is indispensable to an action. Some courts have noted, however, that when the necessary party is immune from suit, there is very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor. *See Enterprise Mgt. Consultants,* 883 F.2d at 894 (citing *Wichita and Affiliated Tribes,* 788 F.2d at 777 n. 13). *Rule 19(b) provides that the factors to be considered to determine whether an action should be dismissed because a non-party is indispensable are: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate*

*remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. See Makah Indian Tribe,* 910 F.2d at 560.

## IV. ANALYSIS

### A. *Converting Defendant's Motion to one for Summary Judgment*

Plaintiff asserts that if matters are considered outside Plaintiff's pleadings and the Exclusive License Agreement, the motion must be treated as one for summary judgment. *See* Doc. 41, 1:8–18. The Federal Rules do not provide for such a limitation.

Relevant matters, such as public records and papers filed with public administrative bodies, may be subject to judicial notice on a Rule 12(b)(6) motion. Papers previously filed with the court may also be judicially noticed. Here, Defendant has submitted copies of two patents filed with the United States Patent and Trademark Office; those exhibits may be properly considered as indisputable (as to authenticity) public records. *See* Helena Mot., Ex's B ("U.S.Patent No. 6,113,665"), C ("U.S.Patent No. 5,830,255"). Defendant has also submitted copies of two court orders originating from Florida which pertain to the issues in the present case and motion; those exhibits are properly considered on Defendant's motion. *See id.,* Ex. E ("Final Order of Dismissal" U.S.D.C., Southern District of Florida, Case No. 99–14073–CIV–PAINE), and F ("Amended Final Order of Dismissal" U.S.D.C., Southern District of Florida, Case No. 99–14073–CIV–PAINE). The deposition of Mr. Alvitre is also properly considered on Defendant's motion (as testimony under oath of a party's agent). *See id.,* Ex. D ("Deposition of Peter E. Alvitre 3/14/01").

 Furthermore, where a party asserts that a plaintiff lacks standing to sue, or has failed to join an indispensable party, the court may consider facts beyond the scope of the plaintiff's complaint. Defendant may produce affidavits and other properly presented evidence in support of its motion. Defendant's motion is not converted into one for summary judgment.

### B. *Plaintiff's Standing*

Defendant asserts that Plaintiff is "either a bare licensee or, at best, an exclusive licensee without all substantial rights in the '665 patent". Helena Mot., 2:27–28.

 Generally, only a patentee, or assignee, has standing to bring a patent infringement suit. *See* 35 U.S.C. § 281; *Abbott Labs. v. Diamedix Corp.,* 47 F.3d 1128, 1130 (Fed.Cir.1995). Title 35 defines "patentee" as the party to whom the patent issued or any successors in title to the patent. *See* 35 U.S.C. § 100(d). A licensee is not entitled to bring suit in its own name as a patentee, unless the licensee holds "all substantial rights" under the patent. *See Mentor H/S, Inc. v. Medical Device Alliance, Inc.,* 240 F.3d 1016, 1017 (Fed.Cir.2001); *Textile Productions, Inc. v. Mead Corporation,* 134 F.3d 1481, 1484 (Fed.Cir.1998); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 875 (Fed.Cir.1991). Such a licensee is in effect an "assignee" and therefor a patentee. *See Mentor H/S, Inc.,* 240 F.3d at 1017; *Textile Productions, Inc.,* 134 F.3d at 1484. Where the exclusive licensee is not granted all substantial rights in the patent, the "exclusive licensee has standing to sue third parties only as a co-plaintiff with the patentee." *See Mentor H/S, Inc.,* supra. A bare licensee has no standing at all. *See Textile Productions, Inc.,* 134 F.3d at 1484; *Rite–Hite v. Kelley Company, Inc.,* 56 F.3d 1538, 1552 (Fed.Cir.1995).

An exception to this rule exists: "an exclusive licensee that does not have all substantial rights does have standing to sue in its own name when 'necessary to

prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself.'" *Textile Productions, Inc.,* 134 F.3d at 1484 (citing *Waterman v. Mackenzie,* 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891)).

Whether a licensee is an exclusive licensee or a bare licensee is determined by the intent of the parties to the license, as manifested by the terms of their agreement and examining the substance of the grant. *See Textile Productions, Inc.,* 134 F.3d at 1484; *Ortho Pharm. Corp. v. Genetics Inst., Inc.,* 52 F.3d 1026, 1033–34 (Fed.Cir.1995). The essential rights to be examined are the right of exclusivity, the right to transfer and most importantly the right to sue infringers. *See Alcatel, USA, Inc. v. Orckit Communications, Ltd.,* 2000 WL 502846 (N.D.Cal.) at *2; *Pfizer, Inc. v. Elan Pharmaceutical Research Corp.,* 812 F.Supp. 1352, 1372 (D.Del.1993); *Calgon Corp. v. Nalco Chem. Co.,* 726 F.Supp. 983, 986 (D.Del.1989).

The use of the word "exclusive" is not controlling; what matters is the substance of the arrangement. *See Textile Productions, Inc.,* 134 F.3d at 1484. "Because patent rights are rights to 'exclude others,' *see* 35 U.S.C. § 154(a)(1), a licensee is an exclusive licensee only if the patentee has promised, expressly or impliedly, that "others shall be excluded from practicing the invention" within the field covered by the license. *See Rite–Hite,* 56 F.3d at 1552. "Whether one is an assignee [or exclusive licensee with all substantial rights] or not is crucial because the failure to assign all rights under the patent bars a claim for infringement unless the owner is made party to the suit." *Afros, S.p.A. v. Krauss–Maffei Corp.,* 671 F.Supp. 1402, 1444 (D.Del.1987), *aff'd without opinion,* 848 F.2d 1244 (Fed.Cir. 1988).

### 1. *Written Instrument Documentation*

The party asserting that it has all substantial rights in the patent must produce written instruments documenting the transfer of proprietary rights. *See Mentor H/S,* 240 F.3d at 1017; *Speedplay, Inc. v. Bebop, Inc.,* 211 F.3d 1245, 1250 (Fed.Cir.2000); *Enzo APA & Son, Inc. v. Geapag A.G.,* 134 F.3d 1090 (Fed.Cir. 1998). Here, Plaintiff has provided Defendant with a copy of the "Exclusive License Agreement" between the Regents and Plaintiff. The agreement was signed by the parties on August 31, 1993, and references Dr. Lovatt's "invention". The invention is referred as the "Replacement of Phosphate by Phosphite as a Nutrient Source for Plants".

It is unclear, however, whether the agreement actually covers the '665 patent, and not just the earlier parent or grandparent patents only. The agreement states that rights are being conferred to Plaintiff for "U.C. Case Number _____ entitled, 'Replacement of Phosphate by Phosphite as a Nutrient Source for Plants'." Plaintiff has not provided a corresponding U.C. Case Number showing that the 665 patent is covered under the agreement. Neither the 665 patent, it's parent and grandparent patents are entitled "Replacement of Phosphate by Phosphite as a Nutrient Source for Plants".

Though Defendant raises the issue that the agreement does not cover the 665 patent, Plaintiff does not dispute that the agreement covers the 665 patent. Enough indicia of reliability exist within the agreement to find that the agreement covers the 665 patent. Plaintiff has supplied the necessary written instrument documenting the transfer of proprietary rights from the Regents to Plaintiff; the agreement is found to cover the 665 patent.

## 2. *Exclusive Licensee Without "All Substantial Rights"*

Plaintiff's rights are closer to those of an exclusive licensee without "all substantial rights". Plaintiff cannot exclude all persons from practicing the 665 patent technology; the Regents retain significant rights in using the invention, patent products, patent methods and associated technology. Likewise, Plaintiff may not transfer its rights in the 665 patent without the written consent of the Regents. In addition, Plaintiff may bring an infringement action, only if the Regents elect not to commence suit, and if the infringement occurred during the period and in a jurisdiction where the Licensee had exclusive rights to the patent. The agreement's express language that states: "[t]he Licensee may request that the Regents take legal action against the infringement of *Regents' Patent Rights.*" *See id.* at ¶ 16.2 (emphasis added). In sum, Plaintiff cannot exercise any of these significant patent enforcement rights without considering the Regents' interests, giving notice to the Regents, obtaining the Regents' consent, or allowing the Regents first right to sue for infringement to protect the Regents' patent rights.

Plaintiff's status as an exclusive licensee is dependent upon using due diligence to make, use, and sell the patented technology. Plaintiff must guarantee all royalties to the Regents. Plaintiff must provide progress reports and royalty reports to the Regents to ensure Plaintiff has met its due diligence requirement. *See id.* at ¶ 6.1. The progress reports are to include: a summary of work completed, key scientific discoveries, summary of works in progress, current schedules of anticipated events or milestones, market plans for introduction of patent products, a summary of resources spent in the reporting period, and activities of sublicensees if any. *See id.* at ¶ 6.2. Plaintiff may not simply sit on its grant of rights under the agreement with Regents; Plaintiff must actively be involved in promoting, making, using, and developing the patented product and process. Moreover, Plaintiff is dependent on the Regents' determination that Plaintiff is using due diligence, under the condition its status can be changed to that of a non-exclusive licensee. Plaintiff is not an assignee, patentee, or exclusive licensee with all substantial rights. Plaintiff is an exclusive licensee with some rights, but not all substantial rights.

### 3. *Comparison with Earlier Cases*

Cases are discussed in reverse chronological order. Plaintiff asserts that *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016 (Fed.Cir.2001), is distinguishable from the present case for four reasons: (1) the Regents are not allowed to manufacture and sell products covered by the 665 patent; (2) the Regents do not retain any right to supervise or control Plaintiff's actions regarding product development; (3) Plaintiff is to pay all maintenance fees; and (4) the agreement does not require the Regents to prosecute actions or suits against third party infringers. Plaintiff's emphasis is misplaced.

In *Mentor H/S,* the Federal Circuit determined that the patent holder, Sonique, had retained significant ownership rights in the patent and that the licensee, Mentor, did not have standing to bring a patent infringement suit on its own. Sonique could develop and manufacture products (for sale only to Mentor), and supervise and control Mentor's product development. *See id.* at 1018. Sonique was obliged to pay the maintenance fees for the patent, "and most importantly, Sonique, [had] the first obligation to sue parties for infringement". *Id.* at 1018. Mentor could only sue for infringement in the event Sonique failed to do so. *See id.* The Federal

Circuit also distinguished the agreement from that court's earlier holding in *Vaupel* where the licensee was found to be an exclusive licensee with all substantial rights and could bring suit in its own name. *See id.* In *Vaupel*, the licensee only had to inform the patentee that the licensee was suing for patent infringement, and was not subject to the patentee's decision to bring suit first or at all. *See id.*

Here, as in *Mentor* and *Vaupel*, Plaintiff cannot institute a patent infringement suit unless the Regents first decline. Although the Regents do not supervise and control Plaintiff's product development, Plaintiff is required to submit progress reports and royalty reports to the Regents to ensure compliance with the agreement's "Due Diligence" provision. ¶ 6.1. The progress reports are to include: a summary of work completed, key scientific discoveries, summary of work in progress, current schedules of anticipated events or milestones, market plans for introduction of patent products, a summary of resources spent in the reporting period, and activities of sublicensees if any. *See id.* at ¶ 6.2. The Regents are kept closely informed of Plaintiff's product development. Failure to show due diligence by Plaintiff in developing, manufacturing, marketing and selling the patent products are grounds for terminating of the agreement or for downgrading Plaintiff's status from an "exclusive licensee" to a "non-exclusive licensee". *See id.* at ¶ 5. *Mentor H/S* does not discuss the licensee's right of assignability. Plaintiff's reliance on maintenance fees as an essential patent right is not dispositive. The Regents' right to practice, publish and use the patent, patent method, patent products, and associated patent technology for further research and education is a substantial right, more than the patentee's right in *Mentor H/S*, which was only to make and sell the patent product to the licensee.

Plaintiff asserts that *Prima Tek II, L.L.C. v. A–Roo Company,* 222 F.3d 1372 (Fed.Cir.2000), is distinguishable from the present case because Plaintiff does not have "a mere 'license to license' ", rather, Plaintiff has an exclusive license to make, use and sell the patented products and method.

In *Prima Tek*, Southpac, the patentee, entered into a licensing agreement with Prima Tek I granting to Prima Tek I the worldwide exclusive, right to make, use and sell the products and processes covered by the patents, but only to the extent necessary to grant a license to Prima Tek II, to allow Prima Tek II to make, use and sell the patented products and processes. Prima Tek I later sublicensed Prima Tek II, and Prima Tek II later sublicensed Highland Supply Corp. ("HSC") and Highland Manufacturing and Sales Co. ("HMSC") granting the right to make, use and sell patented products in the United States, Canada and Mexico. *See id.* at 1374–75. HSC and HMSC brought suit against A–Roo Company for patent infringement. *See id.* at 1375. The court determined that the plaintiffs lacked independent standing to sue because all substantial rights were not conveyed in full to Prima Tek II. *See id.* Prima Tek I was required to execute a sublicense to Prima Tek II and no one else. *See id.* "[B]ecause the rights granted by Southpac to Prima Tek I are circumscribed by the sublicense to Prima Tek II, the agreement effectively nullifies all of Prima Tek I's exclusive territorial rights in the patents". *Id.*

Plaintiff's right to sublicense is limited by requirements that inure to the benefit of the Regents: Plaintiff must collect and guarantee royalties from all sublicensees for the benefit of the Regents; must report to the Regents on the activities of the sublicensees; and must provide the Re-

gents royalty reports on the activities of Plaintiff's sublicensees. While the right to sublicense was a determinative factor in finding that licensee, Prima Tek I, did not have all substantial rights conveyed to it, the court performed no further analyses of Prima Tek I's right of assignability, or right to bring a patent infringement suit in its own name. Plaintiff's right to freely sublicense, while important, is not determinative when considered in light of the three main patent rights: the right to exclusivity, the right to transferability, and the right to bring a patent infringement suit.

Plaintiff argues that *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed.Cir.2000), dictates that where an agreement that provides that consent shall not be withheld unreasonably, the licensee's right to assignment is not significantly restricted. In *Speedplay*, the licensee, Speedplay, was granted an exclusive worldwide, royalty-free, right and license to manufacture, distribute, market, use and sell the patent invention. *See id.* at 1250. Speedplay was granted the "sole right to enforce the Licensed Patents", which was construed as giving Speedplay the substantive right to enforce the patent. *See id.* As here, Speedplay could not assign its rights under the agreement without the consent of the patentee, whose consent "shall not be withheld unreasonably." *See id.* at 1251. The court concluded that the "only reasonable basis for refusing consent would be the impairment of [the patentee's] consideration for entering the [agreement]." *See id.* at 1251–52. The court reasoned that the protective mechanism or reserving a reversion in the patent did not significantly restrict the scope of Speedplay's rights in the patent. *See id.* at 1252.

Although the assignment provisions are similar, here, the substance of the rights conveyed between the patentee and the licensee as a whole are dissimilar. As *Textile* observes, the conveyance of "all substantial rights" must be examined, because no individual right is determinative. In *Speedplay*, the Licensee was given a worldwide, royalty-free, license to manufacture, distribute, market, use and sell the patent invention; the patentee did not reserve its rights to use or make the invention. Here, Plaintiff must provide progress and royalty reports to the Regents; must provide valuable consideration for its license; and must observe the Regents' rights to publish and use the patent, the patented products, the patent method, and associated technology, for its research and educational purposes. In *Speedplay*, the Licensee was given the sole right to enforce the patent, also to the exclusion of the patentee. Plaintiff does not have the most important right: an unconditional ability to bring an infringement suit in its own name. Facial similarity of assignment provisions is not dispositive.

Plaintiff contends that *Textile Productions, Inc. v. Mead Corporation*, 134 F.3d 1481 (Fed.Cir.1998), is distinguishable because no provision exists in its agreement with the Regents to allow the Regents to license the patent technology to third parties. In that case, Textile as co-inventor with Mead, assigned its rights under the patent to Mead; Textile became the asserted exclusive licensee and Mead became the default patentee. The agreement was a requirements contract, whereby the patent holder, Mead, impliedly promised that it would not license others to make the invention for Mead's customers. However, if Textile did not supply Mead's needs, Mead could obtain the patented product elsewhere. Additionally, if a Mead customer required a second source of supply of the product, Mead had the right to grant licenses to enable the customer to have the right to obtain the product from a source other than Textile. The agreement was silent about Mead's ability to grant

licenses to suppliers for non-Mead customers or those who wished to make the invention for their own use. However, the court construed Textile's promise to "assign its entire interest in and to any and all patents derived therefrom to [Mead]" as retaining substantial rights in Mead. The agreement had a "right to sue" provision, as well as a "right to participate in litigation" provision, however, Textile was found to lack standing to sue.

Here, the agreement does not explicitly state that the Regents may license the technology of the 665 patent to persons other than the Plaintiff. However, this is not dispositive to the inquiry whether Plaintiff retains all substantial rights in the 665 patent. Plaintiff may not assign its rights under the patent without the consent of the Regents. The Regents retain a significant right to use, practice and publish the patent, patent method, patented products, and associated technology for research and educational purposes. Plaintiff cannot bring an infringement suit unless the Regents decide not commence suit. Plaintiff must provide the Regents with progress and royalty reports to show compliance with the agreement's due diligence provision in marketing, developing, and using the patent product and method. Plaintiff gains no property rights in the 665 patent once the agreement ends; the Regents retain the fruits of the 665 patent monopoly through royalty fees. Plaintiff does not have unfettered rights as a true patentee, assignee, or exclusive licensee with all substantial rights. In both cases, the agreement contained a "right to sue" provision, and a "right to participate in litigation," provision.

In *Abbott Laboratories v. Diamedix Corporation,* the patentee, Diamedix retained substantial interests in the patents in suit and Abbot did not have an independent right to sue. Diamedix retained the right to make and use the patented inven-

tion as well as sell the products to end user consumers with whom Diamedix had pre-existing contracts and licensees. Abbott's exclusive license was also made subject to prior licenses granted by Diamedix. Although Abbott was given the right of first refusal to sue alleged infringers, it did not enjoy the right to indulge infringements which normally accompanies a complete conveyance of the right to sue.

In this case, Plaintiff does not have the unconditional enjoyment of the patent under the agreement with the Regents. Plaintiff does not retain all substantial rights in the 665 patent. Plaintiff must use due diligence to develop, manufacture, market and sell the patent product, invention, patent methods and associated technology. Plaintiff cannot sit on its rights as a patent holder may, in the same way a patent holder may indulge patent infringements by third parties. *Abbott* does not discuss the right of assignability. *Abbott's* holding is not dispositive.

Plaintiff attempts to distinguish the present case from *Pfizer Inc. v. Elan Pharmaceutical Research Corp.,* 812 F.Supp. 1352 (D.Del.1993), and *Calgon Corporation v. Nalco Chemical Company,* 726 F.Supp. 983 (D.Del.1989), because there, patentees-licensors had specifically retained to themselves and their "affiliates" the right to manufacture and sell the patented products. In both cases, however, the licensee could not assign its interest in the patent without the written permission of the patentee. Nor could the licensee commence an infringement action unless it first notified the patentee of the infringement and offered the patentee the opportunity to bring an action in the patentee's own name. In both cases, the licensee was found not to stand on "equal footing" with the patentee when the licensee's right to sue is conditioned upon the patentee's right of first refusal. Both

courts determined that in light of all the agreement provisions, the licensee did not enjoy all substantial rights in the patent and did not have standing to bring its infringement suit.

#### 4. *"Absolute Failure of Justice"*

"[A]n exclusive licensee that does not have all substantial rights does have standing to sue in its own name when 'necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself.'" *Textile Productions, Inc.*, 134 F.3d at 1484 (citing *Waterman,* 138 U.S. at 255, 11 S .Ct. at 335). Here, the patentee is not the asserted infringer. The Regents as the patentee have carved out an explicit exception, allowing them to practice and use the invention, method, and associated technology. No absolute failure of justice exists. Plaintiff does not have standing to sue solely in its name.

#### D. *Regents as an Necessary Party*

An exclusive licensee without all substantial rights in the patent may not bring an infringement action on its own. *See Mentor H/S*, 240 F.3d at 1017; *Textile Prods.*, 134 F.3d at 1484; *Vaupel*, 944 F.2d at 874–75. The Regents as patent owner retain several significant interests in the patent. They are a necessary party to Plaintiff's infringement suit and must be joined. Biagro Western Sales, Inc. has standing as a co-plaintiff only.

Joinder of the Regents as co-plaintiff to the litigation is feasible. Although the Regents desire not to be a part of the litigation, the Regents appear to be cooperating with Biagro's litigation against Defendant and have asserted their willingness in writing to be a co-plaintiff. *See* Letter from P. Martin Simpson Jr. on behalf of the Regents, to Mark Miller, dated April 26, 2001 submitted at oral argument; also Miller Dec., Ex. A, p. 2 ("Please send copies of all court papers to [the Regents counsel] so that The Regents will be able to cooperate

in any litigation proceedings involving Biagro."). If the Regents will not join the suit, the issue of whether in "equity and good conscience" the action should be dismissed will be considered. *See* Fed. R.Civ.P. 19; *Makah Indian Tribe*, 910 F.2d at 558.

### V. *CONCLUSION*

BIAGRO WESTERN SALES, INC., lacks standing to bring its patent infringement action in its own name. BIAGRO has standing to bring its patent infringement action as a co-plaintiff only. The Regents of the University of California are a necessary party to Biagro's litigation. Biagro shall have thirty (30) days from the date of issuance of this order to join The Regents of the University of California as a party to this action.

Defendant, HELENA CHEMICAL COMPANY's, motion to dismiss for failure to state a claim for which relief may be granted is GRANTED, unless, within thirty (30) days from the date of issuance of this order, The Regents have been joined.

Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED WITHOUT PREJUDICE.

Defendant's motion to dismiss for failure to join an indispensable party is GRANTED, subject to the condition stated above.

SO ORDERED.